No. 2--04--0076

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--236 |
| WILLIAM J. JILES, | ) ) | Honorable Charles R. Hartman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial, defendant, William J. Jiles, was convicted of attempted residential burglary (720 ILCS 5/8--4(a), 19--3 (West 2002)), attempted burglary (720 ILCS 5/8--4(a), 19--1(a) (West 2002)), and possession of burglary tools (720 ILCS 5/19--2 (West 2002)) and sentenced to concurrent terms of 19, 7, and 6 years' imprisonment, respectively. Defendant appeals, arguing that (1) he did not knowingly and intelligently waive his right to be represented by an attorney; (2) the trial court erred in failing to appoint him "standby" counsel; (3) he did not knowingly and intelligently waive his right to a trial by jury; (4) the State failed to prove him guilty beyond a reasonable doubt; and (5) the trial court improperly imposed extended-term sentences on his convictions of attempted

burglary and possession of burglary tools. For the reasons provided below, we reverse the convictions and remand this case for a new trial on all three charges.

On August 7, 2003, defendant was charged by information with attempted burglary (720 ILCS 5/8--4(a), 19--1(a) (West 2002)) and possession of burglary tools (720 ILCS 5/19--2 (West 2002)). Count I of the information, charging defendant with attempted burglary, alleged that on August 1, 2003, defendant knowingly and without permission entered the driveway of 625 West Chestnut in Freeport and peered into a van belonging to Tracy Heitz. Count I of the information further alleged that defendant was dressed in dark clothing, possessed a flashlight and a screwdriver, and intended to enter the van and commit a theft. Count II of the information, charging defendant with possession of burglary tools, alleged that defendant possessed a flashlight and a screwdriver suitable for entering a building or motor vehicle with the intent to enter such place and commit a theft.

Earlier, at his arraignment on August 1, 2003, the trial court informed defendant of the above charges against him and the possible penalties should he be found guilty of the charges. He was further informed that he had a right to be represented by an attorney and that an attorney would be appointed for him if he could not afford one.

On September 24, 2003, defendant was charged by a supplemental information with attempted residential burglary (720 ILCS 5/8--4(a), 19--3 (West 2002)). The supplemental information alleged that on August 1, 2003, defendant knowingly and without permission approached a rear window of the residence at 625 West Chestnut in Freeport, while dressed in dark clothing and while in possession of a flashlight and a screwdriver. The supplemental information further alleged that defendant shined the flashlight into the window and intended to enter the residence and commit a theft.

On November 6, 2003, the trial court conducted a pretrial status hearing at which defendant was present. At this hearing, the State informed the trial court that it had filed a supplemental information charging defendant with attempted residential burglary. However, the trial court never admonished defendant regarding this charge or the possible penalties should he be convicted.

On November 7, 2003, the trial court held another status hearing. Defendant was again present. At the hearing, defendant's attorney, who was an assistant public defender, informed the trial court that defendant wanted a bench trial as opposed to a jury trial. That day, defendant signed a written waiver of his right to a jury trial.

Also at the November 7, 2003, status hearing, defendant inquired about the possibility of proceeding to trial pro se, with the appointment of standby counsel. The trial court responded:

"You have an absolute right to represent yourself, and you are talking about standby counsel, and that is a very interesting question I have discussed with other judges over the years. There's two schools of thought. You either represent yourself , and you represent yourself; or you have somebody else represent you, and I am not sure what the role, and have kicked this around, what the role of standby counsel is. They are not in charge, they can only give you suggestions, and I am not a fan of that. You can represent yourself or somebody else can represent you, but it puts the other lawyer in a weird spot of giving you advice, but that lawyer is not in charge of your case. He isn't really doing anything other than giving you advice and my reaction is a man should either defend himself, which you can do or let somebody else defend you, because I don't know what the role of standby, you know, he sits

out there someplace. He doesn't sit at the table with you. If he sits at the table with you, he's your lawyer, he is defending you, he asks the questions. He decides the strategies. If you are the lawyer, you are asking the questions, you are cross-examining the witnesses, you have to come up with the strategies, and things of that nature. So I don't know how you envisioned your own trial, but if you envision yourself being your own lawyer, you are absolutely right. You have a constitutional right to do that and no one can make you take a lawyer to represent you. But if you represent yourself, you will be asking the questions, you will be coming up with the strategies for the defense, you will be making the objections, you will be arguing the objections, and things of that nature. If you have prepared for it, you know, if you got your case figured out where you are going and you have studied some of the law books on it, you certainly do probably--you are not a stupid man. I mean, there's some people that they wouldn't have a chance. They don't even know where the courtroom is. You are not one of those people. You are an intelligent person. So I'll keep an open mind on the subject."

The assistant public defender then stated:

"I am not going to sit in a back chair seat. I am not going to sit around and watch you have a trial and then I got to come in and give you advice once in a while. It's not going to happen. Either I am running the case or I am not."

The trial court subsequently asked defendant if he would be representing himself or if the assistant public defender would be representing him. Defendant stated that the assistant public defender would represent him.

However, defendant also stated that he had prepared questions that he would like his attorney to ask at the trial. The trial court informed defendant that he could certainly suggest to his attorney what questions to ask but that the rules of evidence might prohibit his attorney from asking them. Defendant assured the trial court that his attorney would be able to ask his questions. The trial court then informed defendant that his attorney may not, for strategic reasons, want to ask his questions. Defendant confirmed with the trial court that should that be the case, his attorney should confer with him.

On November 12, 2003, two days prior to when the trial was scheduled to commence, the assistant public defender informed the trial court that defendant wanted to represent himself. The trial court responded:

"You have a constitutional right to do that, and I don't know [if] it's my job to talk you into it or out of it, so I won't. Just understand that if you do elect to represent yourself that you are still responsible for the rules of evidence. You can't just run, you know, it's a bench trial, so it's a little easier. *** But you're still held to the rules of evidence. Those don't go out the window. On some procedural matters you might be cut a little slack by the Court, but don't count on it."

The trial court asked defendant if he understood. Defendant replied that he did. The trial court then asked defendant if he really wanted to proceed without an attorney. Defendant replied affirmatively. Moments later, the trial court pronounced that defendant would be proceeding pro se.

On November 14, 2003, the trial court conducted a bench trial. Tracy Heitz testified that she lives at 625 West Chestnut Street in Freeport with her husband and seven-year-old son. The house is a two-story with three bedrooms and a basement. Just before 3

a.m. on August 1, 2003, Heitz awoke because it was raining. She went downstairs to check on the basement, which regularly floods. Heitz was descending the stairs from the second floor to the first floor when she noticed a light shining into her living room. Heitz described the light as a "ball of light shining in," about 18 inches in diameter. The rest of the house was totally dark except for a night light in the second-floor bathroom. When asked if she knew where the light came from, Heitz stated that she first thought that the light might have been her husband awake in the kitchen but then realized that her husband had been in the bed with her. Heitz testified that she subsequently remembered that she left the dining room window curtains open. Shown a chalkboard diagram of her house that was prepared by Freeport detective Matthew Summers, Heitz identified the dining room as located directly behind the living room, at the rear of the house.[1] Heitz testified that she had guessed that the light "could have been coming from that direction." According to Heitz, because the dining room window is located at the back of the Heitzes' house, and there is another house directly behind theirs, it is unlikely that car headlights would shine through that window. Later in her testimony, Heitz asserted that the light she saw in the living room came from the south end of her house, and she denied telling detectives that the light came from the west.

After observing the light in her living room, Heitz went upstairs to wake her husband. Heitz then started to go back down to the first floor. She stopped halfway down the stairs on a landing and looked out a window that faces her driveway. Heitz saw a person shining

---

[1] The diagram has not been made part of the record on appeal.

a flashlight and looking into her van, which was unlocked. The person wore dark clothing and appeared to be directing the flashlight downward toward the vehicle console, where Heitz kept her sunglasses and such. Heitz stood there for a minute and watched the person shine the flashlight on various other spots within the van. Heitz then went back upstairs and called 911. While on the phone with the emergency dispatcher, Heitz went back down to the landing, but did not see the person. Heitz then went back upstairs and looked out a bedroom window. She observed motion detector lights from the house across the street turn on and then saw a person dressed in the same clothing as the person she saw by her van. Heitz told the emergency dispatcher that she thought the person went across the street to 626 West Chestnut. A short time later, Heitz saw the person on the ground, surrounded by police officers. According to Heitz, there was no damage done to her van nor were there signs of a forced entry.

Officer Robert Plavchak of the Freeport police department testified that at about 2:57 a.m. on August 1, 2003, he was on duty and received a report of a person with a flashlight looking into vehicles in the 600 block of West Chestnut. Officer Plavchak drove to the 600 block and walked to 626 West Chestnut, where according to the dispatcher the suspect was last seen. As he approached 626 West Chestnut, he saw a man, later identified as defendant, walking down the driveway. Defendant was wearing dark clothing and clear plastic or latex gloves. Defendant was in the process of removing the glove from his right hand. Officer Plavchak drew his gun and ordered defendant to the ground.

Officer Andy Schroeder of the Freeport police department testified that he also responded to the call at West Chestnut on August 1, 2003. Officer Schroeder drove to Homer Street, which is one block north of Chestnut, and walked south toward Chestnut

through the backyards.  He heard Officer Plavchak call over the radio that the suspect had been detained at 626 West Chestnut.  When Officer Schroeder arrived at the location, defendant was down on the ground.  Defendant was wearing dark clothing and had a latex glove on one hand.  Another latex glove was on the ground next to defendant's head. Officer Schroeder saw the tip of a screwdriver sticking out of defendant's back pocket. Officer Schroeder retrieved the screwdriver and recovered from defendant's front pocket an additional pair of latex gloves and a flashlight.

Officer Shawn Sullivan of the Freeport police department transported defendant from 626 West Chestnut to the police station.  Officer Sullivan read defendant Miranda warnings. Defendant signed a Miranda waiver form.  In response to Officer Sullivan's questioning, defendant stated that he had made arrangements with an unnamed person to pick up a package at 628 West Chestnut.  Defendant was to receive $500 for picking up the package.  Defendant said that he had made a similar pickup and delivery for the person before, at a different location.  When Officer Sullivan asked what the package contained, defendant said he did not know but had an idea, although he declined to tell Officer Sullivan what that was.  Defendant explained that he had latex gloves so his fingerprints would not be on the package.  Defendant claimed that the screwdriver in his pocket was for protection, as he had recently been in an altercation at a local bar, the Cherokee Pub. Defendant denied having gone to 625 West Chestnut.

Officer Sullivan testified that there was no 628 West Chestnut, but that there was a disturbance at the Cherokee Pub on the date defendant had mentioned.

Detective Jennifer Manus of the Freeport police department testified that on August 25, 2003, she interviewed defendant.  Defendant had requested to speak with a detective.

After being advised of his <u>Miranda</u> rights, defendant stated that he indeed was at 625 West Chestnut in the early morning hours of August 1, 2003. Defendant stated that he had received a call on his cellular phone from an unknown person asking him to pick up a package from 625 West Chestnut. A friend of defendant's had arranged the delivery job. Defendant had performed three similar delivery jobs in the past. Each time, an unknown person would call defendant's cellular phone with instructions for the delivery. After defendant completed the job, he would find an envelope of money in his car.

The caller on August 1, 2003, advised defendant that he was to pick up a package from inside a van with Tasmanian Devil seat covers at 625 West Chestnut. Defendant agreed and went to the location. He looked inside the van with a flashlight but the van did not have Tasmanian Devil seat covers. Defendant then went across the street to find the van. When defendant didn't find the van, he started to head back to 625 West Chestnut. He was then stopped by police. Detective Manus asked defendant for his cellular phone number so that she could check his phone records. However, Detective Manus never did check defendant's phone records. There is no indication in the record that the police recovered any type of package in the area where defendant was found.

Freeport detective Matthew Summers testified that he photographed and measured the Heitz house and its vicinity. Detective Summers identified two photographs of the Heitz house. The first depicted the driveway of the house, which runs parallel with the west side of the house. Detective Summers identified a window on the west side as the landing window through which Heitz claimed to have observed defendant. Detective Summers testified that the second photograph depicted the south end of the house and the dining room window.

Defendant did not present any evidence. During his closing argument, defendant argued that the State failed to prove him guilty beyond a reasonable doubt in that the State did not show any attempt to break into the house or the van.

The trial court found defendant guilty of attempted residential burglary, attempted burglary, and possession of burglary tools. In its memorandum opinion, the trial court found as follows:

"The testimony of the complaining witness is clear and very credible. Her testimony was that a light beam was focused in the living room and the beam of light entered the house from the back of the house through the rear dining room window. There is no 'accidental' explanation for someone shining a light through her rear window on to the living room floor. *** Defendant was apparently using the beam to search inside the van and house."

The trial court further found:

"Based on all the facts in the case which I would describe as strong circumstantial evidence combined with defendant's inconsistent exculpatory accounts persuades me beyond a reasonable doubt that it was defendant's intention to commit residential burglary and burglary [and] he had taken substantial steps to initiate entry and he was in dangerous proximity to success just before he was apprehended by law enforcement officers."

On January 9, 2004, the trial court conducted a sentencing hearing. During the hearing, defendant argued that his conviction of possession of burglary tools should be vacated due to principles of one act, one crime. The trial court disagreed, but stated: "[T]hat's a very good point. *** [H]ad you gone to law school instead of being a [burglar],

you'd probably [have done] fairly well." Ultimately, the trial court found that defendant was eligible to be sentenced as a Class X felon on his conviction of attempted residential burglary, due to his two prior convictions of residential burglary, in 1994 and 1988. See 730 ILCS 5/5--5--3(c)(8) (West 2002). The trial court then sentenced defendant to an extended term of 19 years' imprisonment for the attempted residential burglary conviction. It also sentenced defendant to extended terms of seven and six years' imprisonment on the convictions of attempted burglary and possession of burglary tools. The trial court ordered that defendant's sentences be served concurrently. Following the denial of his posttrial motions, defendant filed a timely notice of appeal.

Defendant's first contention on appeal is that he did not knowingly and intelligently waive his right to be represented by an attorney. Although defendant failed to properly preserve this contention (see People v. Enoch, 122 Ill. 2d 176, 186 (1988)), we review it for plain error because the contention involves whether defendant was denied a substantial right (see People v. Coleman, 347 Ill. App. 3d 266, 272 (2004)).

It is well established that the sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees an accused in a criminal proceeding the right to the assistance of counsel. Faretta v. California, 422 U.S. 806, 833-34, 45 L. Ed. 2d 562, 580-81, 95 S. Ct. 2525, 2540 (1975). The right to counsel is fundamental and will not lightly be deemed waived. People v. Stoops, 313 Ill. App. 3d 269, 273 (2000). That said, the sixth amendment also grants a defendant the correlative right to proceed without counsel. Faretta, 422 U.S. at 834, 45 L. Ed. 2d at 581, 95 S.Ct. at 2540. Indeed, the right of self-representation is as basic and fundamental as the right to be represented by counsel. People v. Haynes, 174 Ill. 2d 204, 235 1996 , quoting People v. Nelson, 47 Ill. 2d 570, 574 1971 . Accordingly, a defendant may waive his constitutional right to counsel as long as the waiver is

voluntary, knowing, and intelligent. Haynes, 174 Ill. 2d at 235. Although a court may consider the decision unwise, "a defendant's valid election to represent himself must be honored out of 'that respect for the individual which is the lifeblood of the law.'" People v. Silagy, 101 Ill. 2d 147, 180 (1984), quoting Illinois v. Allen, 397 U.S. 337, 350-51, 25 L. Ed. 2d 353, 363, 90 S. Ct. 1057, 1064 (1970) (Brennan, J., concurring).

Pursuant to Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)), certain admonishments must be given by the trial court before a defendant may be found to have validly waived his right to counsel. Rule 401(a) provides as follows:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." 134 Ill. 2d R. 401(a).

The Illinois Supreme Court has held that compliance with Rule 401(a) is required for an effective waiver of counsel. Haynes, 174 Ill. 2d at 235; People v. Baker, 94 Ill. 2d 129, 137 (1983). Rule 401(a) admonishments must be provided at the time the court learns that a defendant chooses to waive counsel, so that the defendant can consider the ramifications of such a decision. Stoops, 313 Ill. App. 3d at 275; People v. Langley, 226 Ill. App. 3d 742, 750 (1992). That said, strict, technical compliance with Rule 401(a) is not always required; rather, substantial compliance will be sufficient to effectuate a valid

waiver if the record indicates that the waiver was otherwise made knowingly, intelligently, and voluntarily, and the admonishments the defendant received did not prejudice his rights. People Coleman, 129 Ill. 2d 321, 333 1989 People v. Johnson, 119 Ill. 2d 119, 132 1987 . In this case, we do not believe that there was even substantial compliance with Rule 401 a . At defendant s arraignment on August 1, 2003, the trial court did inform defendant that he was charged with attempted burglary and possession of burglary tools and of the possible penalties should he be convicted of those crimes. It also informed defendant that he had a right to an attorney and that one would be appointed for him if he was indigent. However, this was more than three months prior to the November 7, 2003, status hearing, when defendant first inquired about waiving his right to counsel, and the November 13, 2003, hearing, when defendant executed the waiver. Defendant cannot be expected to rely on admonishments given months earlier, when he was not requesting to waive counsel. Stoops, 313 Ill. App. 3d at 275. Furthermore, the trial court never did admonish defendant regarding the most serious crime with which he was charged, attempted residential burglary, or the possible penalties for that crime. This was especially important because, due to his two prior Class 1 felony convictions, defendant was facing mandatory sentencing as a Class X felon to a term of imprisonment for up to 30 years.

The State cites to several cases for the proposition that complete compliance with Rule 401(a) is not necessary where a defendant has a certain level of legal sophistication. See People v. Jackson, 59 Ill. App. 3d 1004, 1008 (1978); People v. Smith, 33 Ill. App. 3d 725, 728 (1975); People v. Black, 68 Ill. App. 3d 309, 313 (1979). We find the cases that the State relies upon to be distinguishable from the case here. In Jackson, the defendant had a "lengthy record" and a "familiarity with criminal law and procedure, which he demonstrated throughout the trial." Jackson, 59 Ill. App. 3d at 1008. Therefore, the trial court found that the defendant was not prejudiced by the lack of Rule 401(a)

admonishments. <u>Jackson</u>, 59 Ill. App. 3d at 1008-09. Here, however, defendant did not demonstrate any legal savvy during his trial. In fact, defendant neglected to put on a case-in-chief and was ineffective in cross-examining witnesses. Indeed, defendant's cross-examination was so ineffectual that the trial judge himself questioned Heitz, the State's main witness, on a couple points. Although the trial court commended defendant during the sentencing hearing on a point well made, defendant's overall performance as his own attorney was subpar.

Furthermore, in <u>Smith</u>, unlike the case herein, the defendant had informally studied law for 12 years and boasted of his successful trial tactics in obtaining a mistrial in a previous case. <u>Smith</u>, 33 Ill. App. 3d at 728. However, even in <u>Smith</u>, the trial court informed the defendant of the charges he faced. <u>Smith</u>, 33 Ill. App. 3d at 728. Finally, <u>Black</u> is also unlike the case herein, as the defendant in that case was advised of all three of the Rule 401(a) requirements, including the nature of the crime, the possible penalties, and his constitutional right to counsel. <u>Black</u>, 68 Ill. App. 3d at 313.

In summary, the trial court's failure to comply with Rule 401(a) denied defendant his fundamental right to be represented by counsel. As such, defendant's convictions must be reversed and the cause remanded for a new trial, before which defendant should be given the requisite admonishments and the opportunity to be represented by an attorney or to make a voluntary, knowing, and intelligent waiver of that right.

Since we are remanding this cause for a new trial, we must consider for double jeopardy purposes whether the evidence was sufficient to sustain the convictions beyond a reasonable doubt. See <u>People v. Taylor</u>, 76 Ill. 2d 289, 309 (1979). The rules with respect to double jeopardy analysis are well-settled. The double jeopardy clause forbids a second, or successive, trial for the purpose of affording the prosecution another opportunity to supply evidence it failed to muster in the first proceeding. <u>People v. Melchor</u>, 362

*Ill. App. 3d 335, 356 2005* . *For purposes of double jeopardy, the United States Supreme Court has distinguished between judgments reversing convictions on account of trial error and judgments reversing convictions on account of evidentiary insufficiency.* Melchor, 362 Ill. App. 3d at 356. *Double jeopardy does not preclude retrial of a defendant whose conviction is supported by sufficient evidence but set aside because of errors in the trial process.* People v. Olivera, *164 Ill. 2d 382, 393 1995* . *Evidence is sufficient when a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could find that the essential elements of the offense were proven beyond a reasonable doubt.* People v. Collins, *106 Ill. 2d 237, 261 1985* .

Defendant was convicted of possession of burglary tools, attempted burglary, and attempted residential burglary.  The crime of possession of burglary tools is defined as follows:

"A person commits the offense of possession of burglary tools when he possess any key, tool, instrument, device, or any explosive, suitable for use in breaking into a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any depository designed for safekeeping of property, or any part thereof, with intent to enter any such place and with intent to commit therein a felony or theft."  720 ILCS 5/19--2 (a) (West 2002).

The crime of burglary is defined as follows:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft."  720 ILCS 5/19--1(a) (West 2002).

The crime of residential burglary is identical to burglary except that the object of the crime is "the dwelling place of another, or any part thereof." 720 ILCS 5/19--3(a) (West 2002).

A person is guilty of the inchoate offense of attempt when with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. 720 ILCS 5 8--4 a West 2002 .

The common element of the crimes of burglary, residential burglary, and possession of burglary tools is the intent to commit a burglary, and we begin by examining whether the evidence satisfies that element. The trial court found that: (1) defendant shined a flashlight into the Heitzes' van; (2) the light that Heitz saw in the living room came from defendant, who shined it deliberately into the house; and (3) defendant's wearing of latex gloves and possession of a flashlight and a screwdriver, in combination with the lateness of the hour, his shining of the light into the van and the house, and his conflicting reports of why he was in the neighborhood, indicated that he was not there for an innocent purpose nor was he merely "casing" the Heitzes' house for a later date, but he in fact intended to commit a burglary.

Defendant argues that a rational person could not conclude that the light Heitz saw in the living room came from him, let alone that he shined it into the house deliberately. Defendant proposes that the evidence shows at most that he shined the light into the house accidentally as he was looking into the Heitzes' van. The State responds that the evidence supports the inference that the light came from the back of the house and therefore could not have been a beam that strayed during defendant's illumination of the Heitzes' van, which was parked on a different side of the house. According to the trial court's recollection, Heitz testified that "a light beam was focused in the living room and the beam of light entered the house from the back of the house through the rear dining room." In fact, Heitz initially testified that the light "could have" come from the dining room, but later

testified unequivocally that the light came from the south end of the house. Although the map of the house is not in the record, Detective Summers's testimony indicated that the dining room window is on the south end of the house. It is the province of the trier of fact to judge the credibility of witnesses (People v. Pickens, 354 Ill. App. 3d 904, 911 (2004)), and apparently the trial court credited the latter part of Heitz's testimony, where she affirmed definitely that the light came from the south end of the house. We believe that a rational person could conclude that the light that Heitz saw in her living room came from defendant, and that he shined the light deliberately into both the Heitzes' home and their van as part of reconnoitering the scene.

The evidence also supports the further conclusion that defendant intended to burglarize the Heitzes' home and van. A defendant's intent is rarely susceptible of direct proof and is generally proved circumstantially. People v. Williams, 295 Ill. App. 3d 663, 665 (1998). Defendant was lurking about at 3 a.m. on a rainy night, wearing dark clothing and latex gloves and equipped with a screwdriver and a flashlight. See Commonwealth v. Melnynczenko, 422 Pa. Super. 363, 366, 619 A.2d 719, 721 (1993) (proof of intent to commit burglary, where defendant walked through backyards, wearing dark clothing and equipped with a screwdriver, pry bar, flashlight, and gloves). To his suspicious presence defendant added suspicious acts, i.e., flashing his light into the Heitzes' house and van, illuminating in particular the van's console, where valuables are often kept. Moreover, defendant offered contradictory accounts of why he was on the Heitzes' property.

Defendant argues that proof of intent is absent because there is no indication that he attempted to enter the house or the van. That defendant did not attempt entry is but one of a complex of circumstances for our consideration. The acts that defendant did perform are

sufficient for a rational person to infer that he intended to burglarize the Heitzes' home and van.

In addition to intent, the attempt statute also requires that the defendant take a "substantial step" toward the commission of the crime. See 720 ILCS 5 8--4 a  West 2002 .  Thus, we must determine whether defendant took a substantial step toward committing the crimes of burglary and residential burglary.  (We continue below our discussion of the possession of burglary tools conviction.)  For aid in determining what constitutes a substantial step, Illinois courts have looked to the Model Penal Code, section 5.01 of which sets forth a definition of attempt that employs the phrase, substantial step.  People v. Hawkins, 311 Ill. App. 3d 418, 424 2000 . Under section 5.01,  c onduct shall not be held to constitute a substantial step unless it is strongly corroborative of the actor s criminal purpose.  Model Penal Code §5.01 2 , at 74 1985 . Section 5.01 provides a list of conduct that  if strongly corroborative of the actor s criminal purpose, shall not be held insufficient as a matter of law.  Model Penal Code §5.01 2 , at 74 1985 . The list reads

a  lying in wait, searching for or following the contemplated victim of the crime

b  enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission

c  reconnoitering the place contemplated for the commission of the crime

d  unlawful entry of a structure, vehicle or enclosure in which it is contemplated the crime will be committed

e  possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

Model Penal Code §5.01(2), at 74-75 (1985).

Mere preparation is not a substantial step, yet "the offense of attempt may be committed at some point short of the last deed prior to committing the intended offense." *People v. Terrell*, 110 Ill. App. 3d 1086, 1090 (1982), aff'd, 99 Ill. 2d 427 (1984). Precisely what is a substantial step must be determined by evaluating the facts and circumstances of each particular case. *People v. Smith*, 148 Ill. 2d 454, 459 (1992).

Defendant's conduct satisfied two of the section 5.01 factors. Factor (c)--reconnoitering the place contemplated for the commission of the crime--was fulfilled by defendant's prowling around the Heitzes' property and shining his flashlight into their van and home. Here the present case differs from *Smith*, 148 Ill. 2d 454, cited by defendant. In *Smith*, the defendant was arrested while in the process of driving around Waukegan with the admitted aim of finding and robbing a certain jewelry store. The defendant had not yet found the store when he was arrested. He did not know the name of the store but knew what the building looked like. The supreme court reversed the defendant's conviction of attempted armed robbery. The court reasoned that the defendant's conduct did not meet factor (c) of section 5.01 because "the place contemplated for the commission of the crime [citation] *** i.e.*, the jewelry store, has yet to be identified, either by name, location, or physical description." *Smith*, 148 Ill. 2d at 464. The court held that "reconnoitering presumes that the place to be reconnoitered has already been located and identified." *Smith*, 148 Ill. 2d at 464. In this case, defendant had indeed located the place contemplated for the commission of the crimes and reconnoitered it.

Defendant also possessed materials to be used in the commission of the contemplated crimes, thus fulfilling factor (f). Defendant wore dark clothing and possessed a screwdriver, latex gloves, and a flashlight--

useful materials for a nighttime burglary. Even his explanation for having these items was not quite innocent, involving some rather dubious courier duties. In any event, that explanation was undermined by contradictions.

Defendant considers it decisive that he never attempted entry of the Heitzes van or the house. As we noted above, this is not a persuasive point. The approach of the Model Penal Code is to concentrate on the steps a defendant has taken toward the commission of the crime rather than on what steps remain. Hawkins, 311 Ill. App. 3d at 424. Under the Model Penal Code, a defendant need not complete the last proximate act in order to be convicted of an attempt. Smith, 148 Ill. 2d at 459. A defendant has committed the last proximate act when he has done all that he believes necessary to effect a particular result that is an element of the offense. United States v. Jackson, 560 F.2d 112, 118 2d Cir. 1977 . This policy is sound, for as a defendant s proximity to the crime increases, the potential for danger increases as well. Ultimate proximity to the crime carries risks that the law cannot tolerate. As the supreme court said in People v. Terrell, 99 Ill. 2d 427, 435 1984 , affirming a conviction of attempted armed robbery It should not be necessary to subject victims to face to face confrontation with a lethal weapon in order to make a positive finding of the essential element of a substantial step. Nor was it necessary here for defendant to provoke the Heitzes with the last proximate step, i.e., attempted entry of their van or house, for that could very well have led to violence.

Bearing substantial factual similarities to this case is Melnynczenko, 422 Pa. Super. 363, 619 A.2d 719, a Pennsylvania decision. In Melnynczenko, the defendant was found walking through the backyards of residences while dressed in dark clothing and carrying a heavy-gauge screwdriver, a 10-inch pry bar, two flashlights, a knit cap, and a pair of gloves. He appealed his conviction of attempted burglary. The appellate court rejected the suggestion "that a defendant cannot be convicted of attempted burglary until he physically tampers with a building or occupied structure." Melnynczenko, 422 Pa. Super. at 367, 619 A.2d at 721. Inferring from the circumstances that the defendant "was reconnoitering the area both

with the intent to burglarize a residence and with sufficient means to carry out his intent," the court affirmed the defendant's conviction, finding that he had taken a "substantial step" toward the commission of burglary, as required by Pennsylvania's attempt statute. Melnynczenko, 422 Pa. Super. at 367, 619 A.2d at 721. Although not controlling, Melnynczenko is persuasive authority for holding that a defendant who is equipped for a burglary and is reconnoitering possible targets may be guilty of attempted burglary even where, as here, he made no attempt to enter any structure. In fact, the holding in Melnynczenko is even broader, for, as the dissent pointed out, there was no evidence that the defendant had even looked into any windows (unlike here). Melnynczenko, 422 Pa. Super. at 381, 619 A.2d at 728 (Brosky, J., concurring in part and dissenting in part). It is possible, though not certain, that the dissent would have upheld the conviction had the facts in Melnynczenko been like those in this case.

Defendant cites two cases, People v. Peters, 55 Ill. App. 3d 226 1977, and People v. Toolate, 45 Ill. App. 3d 567 1976, neither of which persuades us. In Toolate, decided by the Fourth District Appellate Court, a police officer on patrol noticed fresh cuts on the lock of the front door of a sandwich shop. The officer followed a nearby track of footprints in the snow that led him to the defendant, who was lying down on the seat of a car. The officer also found a screwdriver and a crowbar at a nearby intersection. The appellate court reversed the defendant s conviction of attempted burglary, finding that the State established no connection between the defendant, the marks on the door, and the screwdriver and crowbar. Toolate, 45 Ill. App. 3d at 569-70. Here, by contrast, firsthand observations as well as defendant s own admissions placed him at the Heitzes property. Moreover, unlike in Toolate, defendant was found in possession of tools capable of effecting a burglary. Toolate, therefore, has no bearing on the present case.

In Peters, decided by this district, the manager of a tavern heard footsteps on the roof of the premises at 2 30 a.m. and called the police. The police arrived to discover two ladders resting on the sides of the

building, one of them placed inside a fenced-in area that housed garbage. The officers found the defendant and his accomplice hiding within the fenced-in area. The defendant denied that he and his companion had gone onto the roof. He claimed that they had hitchhiked to the area and were looking for empty bottles to return for a refund. However, an automobile belonging to the defendant was found near the tavern. Also, the manager testified that he had not heard the gate to the refuse area open or close.

The defendant was convicted of attempted burglary. The appellate court reversed the conviction, reasoning as follows

As defense counsel properly points out, proof of attempted burglary must include the intent to make an unauthorized entry into the building, the intent to commit a felony or theft inside the building and, lastly, a substantial step towards the commission of the burglary. We find that, in the instant case, the State failed to prove a substantial step towards the entry into the building in question and, therefore, reverse.

While it is true the jury could have concluded the defendants herein were on the roof of the building in question, there is no evidence whatsoever that they actually made any attempt to enter the building. Peters, 55 Ill. App. 3d at 227-28.

Peters s holding is of questionable vitality. Attempted entry of the premises would have been the last proximate act, but such proximity is not required under Illinois law, which follows the Model Penal Code. Terrell is illustrative of this approach. In affirming a conviction of attempted armed robbery, the supreme court rejected the defendant s argument that his conviction should be overturned because he did not attempt to enter the premises that he was contemplating for robbery

Defendant    was in possession of the materials necessary to carry out an armed robbery and was near the place contemplated for its commission. He was armed with a loaded revolver, a disguise and the assistance of an accomplice, whose presence and identical disguise indicated a prearranged plan. He

was lying in wait, only 25 to 30 feet from his target, with gun in hand. It was only the arrival of the police which caused him to abandon his plan. *Terrell*, 99 Ill. 2d at 435.

If the defendant in *Terrell* did not need to enter the premises to be guilty of attempted armed robbery, the defendant in *Peters* did not need to attempt entry of the premises to be guilty of attempted burglary. We reject *Peters*'s statement of the law and also find the case factually distinguishable. In *Peters*, the State's sole evidence of a substantial step toward burglary was that the defendant was on the roof of a building at 2:30 a.m. There was no evidence that the roof provided a means of ingress or that the defendant either wore clothing or possessed materials appropriate for a burglary. Those facts stand in stark contrast to this case, where defendant was found lurking on residential property in the early hours of the morning, dressed in dark clothing and latex gloves, and equipped with a screwdriver and a flashlight that he shined into the van and the house.

We conclude, then, that a rational person could find defendant guilty of attempted burglary and attempted residential burglary. We conclude the same with respect to the charge of possession of burglary tools. The defendant's intent is the controlling factor when the tools in question could be used for innocent purposes as well as illegal purposes. *People v. Whitfield*, 214 Ill. App. 3d 446, 456 (1991). The flashlight and the screwdriver found in defendant's possession both can be used for innocent purposes, but given that defendant possessed them late on a rainy night while dressed in dark clothing and wearing latex gloves, and that he used the flashlight to illuminate the interior of a van and a house, there is a reasonable basis to conclude that defendant intended to use the tools for a burglary.

In summary, the evidence was sufficient to convict defendant of attempted burglary, attempted residential burglary, and possession of burglary tools. As such, defendant's retrial on these charges upon remand is not barred on double jeopardy grounds. We note that we have made no determination that might be binding upon remand as to defendant's guilt or innocence of the charged offenses. We hold merely that the evidence was sufficient to support defendant's convictions of such and thus that a retrial is not prohibited. In light of our ruling that a remand is in

order, we need not address defendant s contentions concerning the trial court s failure to appoint standby counsel, his lack of a knowing and intelligent waiver of a jury trial, and his sentence.

For the foregoing reasons, we reverse defendant s convictions and remand the cause for proceedings consistent with our opinion.

Reversed and remanded.

CALLUM and GILLERAN JOHNSON, JJ., concur.