2022 IL App (1st) 191947-U

No. 1-19-1947

Order filed November 23, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 C6 60468 |
| | ) | |
| ANDREA BILLUPS-DRYER, | ) | The Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justices Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's conviction for theft is reversed and the cause remanded for a new trial where the trial court failed to substantially admonish defendant under Illinois Supreme Court Rule 401(a) before accepting her waiver of counsel.

¶ 2     Following a jury trial where she proceeded *pro se*, defendant Andrea Billups-Dryer was found guilty of felony theft (720 ILCS 5/16-1(a)(2)(A) (West 2016)), and the trial court sentenced her to two years' probation and ordered her to pay restitution. On appeal, Billups-Dryer contends her waiver of counsel was ineffective because the trial court failed to admonish her as required by

Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). We agree, and therefore reverse and remand for a new trial.

¶ 3    Billups-Dryer was charged with one count of Class 3 felony theft for allegedly posing as the landlord of a property—which she did not own or in which she did not otherwise have an interest—so that she could obtain rent from a tenant. The information alleged that from September 1, 2016, through May 25, 2017, Billups-Dryer deceptively obtained between $500 and $10,000 from Michele Patterson-Joseph with the intent to permanently deprive her of that money.

¶ 4    The half-sheet reflects that the trial court granted a private attorney leave to file an appearance for Billups-Dryer on July 25, 2018. The half-sheet for August 13, 2018, however, states that Billups-Dryer "is allowed to proceed pro-se."[1]

¶ 5    During arraignment on September 14, 2018, Billups-Dryer appeared without counsel and informed the trial court that she was "self-representing." The trial court advised that Billups-Dryer was charged with a Class 3 felony and asked whether she knew "what a Class 3 felony is?" Billups-Dryer answered affirmatively. The trial court then stated that it must ask "a few questions if you're trying to waive your right to a lawyer," including Billups-Dryer's age and education. Billups-Dryer stated that she was 51 years old and completed two years of college. The trial court also asked whether Billups-Dryer had "any prior involvement in legal proceedings," and she answered affirmatively.

---

[1]The record on appeal does not include a report of proceedings for July 25, 2018, or August 13, 2018.

¶ 6    Then the following colloquy occurred:

"THE COURT: Do you know that a self-representative defense is not a simple matter of telling your story. It requires appearance [*sic*] to various technical rules governing the conduct of a trial; do you know that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: A lawyer has substantial experience and training in trial procedures and the prosecution will be represented by an experienced attorney; do you know that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: A person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence; do you know that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: Also, if you select a jury trial, you may not make effective usage of such rights as your *voir dire* or questioning of jurors; do you know that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: *** [I]f you're not represented by a lawyer you may make tactical decisions that produce unintended consequences; are you aware of that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: Now, a defendant proceeding *pro se* will not be allowed to complain on appeal about the competency of his or her representation; are you aware of that?

[BILLUPS-DRYER]: Sure, your Honor.

THE COURT: And the effectiveness of your defense may be diminished by your dual roll [*sic*] as both the lawyer and the defendant or the accused; do you understand that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: Because you are representing yourself, you also realize that you will receive no special consideration from the Court?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: And also you will receive no extra time for preparation or greater time merely because you are *pro se*; do you understand that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: I also have to ask you whether you are aware that a lawyer can render important assistance by determining the existence of possible defenses to your particular charge; are you aware of that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: Now, a lawyer could assist you in possibly having your charges reduced or you receiving a lesser penalty; are you aware of that?

[BILLUPS-DRYER]: Yes, your Honor.

THE COURT: Now, also if you are represented by a lawyer and this matter resulted in a conviction, then the lawyer could present evidence to the Court that may result in a lower or lesser sentence; are you aware of that?

[BILLUPS-DRYER]: Yes, your Honor."

¶ 7       The trial court further advised that if Billups-Dryer proceeded *pro se*, she might not have the opportunity "to change [her] mind during the trial and ask for a lawyer." Billups-Dryer responded that she understood. The trial court stated that Billups-Dryer received the "401 admonishments" and would be "representing [her]self." Billups-Dryer acknowledged the trial court's statement. The trial court then handed Billups-Dryer a copy of the information charging

her with Class 3 felony theft from September 1, 2016, through May 25, 2017. Billups-Dryer agreed to waive a reading of the indictment and pleaded not guilty.

¶ 8 Prior to trial, Billups-Dryer filed numerous motions, subpoenas, and affidavits, including challenges to the legal sufficiency of the theft charge, motions *in limine*, and responses to the State's discovery requests and motions *in limine*.

¶ 9 On April 22, 2019, after the parties argued their motions *in limine*, the trial court told Billups-Dryer that she was charged with a "Class 3 offense" with a sentencing range of "two to five year[s']" imprisonment. The trial court asked whether the State would offer a plea bargain. The State then offered Billups-Dryer one year of probation with no restitution.

¶ 10 The trial court stated that the cause would be continued to the next day for Billups-Dryer to consider the offer. Billups-Dryer then orally moved to dismiss the case "for lack of a sworn complainant [*sic*] by an injured party." The trial court denied Billups-Dryers motion. Billups-Dryer then moved for the appointment of "constitutional counsel," stating that if the matter proceeded to trial, she "may need someone to assist" with her testimony and with paperwork.

¶ 11 Then the following colloquy occurred:

"THE COURT: Now, Ms. Billups, we had this discussion awhile [*sic*] ago. I think this is your second time asking for someone to assist you. I admonished you pursuant to Supreme Court Rule 401. I told you at that time that I would probably not be appointing a lawyer to help you with this case.

[BILLUPS-DRYER]: Your Honor, I'm not asking for a lawyer.

THE COURT: I don't know who else would be—

[BILLUPS-DRYER]: Constitutional counsel could be a friend or someone. The constitution was written 100 years before *** the bar association, so therefore I should be able to get someone."

¶ 12    The trial court denied Billups-Dryer's motion.

¶ 13    Prior to trial on June 17, 2019, the State informed the trial court that it offered to reduce the offense to a misdemeanor with supervision. The trial court admonished Billups-Dryer pursuant to *People v. Curry*, 178 Ill. 2d 509 (1997), explaining that she was charged with a Class 3 felony carrying a minimum sentence of "two years" in prison. Billups-Dryer rejected the plea offer.

¶ 14    At trial, Patterson-Joseph testified that in August 2016, she learned that a residence on Capri Lane in Richton Park, Illinois (residence), was available to rent. Patterson-Joseph visited the residence in late August and met Billups-Dryer, whom she identified in court. Billups-Dryer advised that she "obtained" the residence from a woman involved in a divorce, and that rent was $1000 per month. Billups-Dryer refused to provide a lease but stated that Patterson-Joseph would receive a receipt when she paid rent.

¶ 15    In September 2016, Patterson-Joseph and her family moved into the residence. Patterson-Joseph lived there for approximately nine months and paid $1000 to Billups-Dryer each month. Patterson-Joseph identified money order receipts, which are included in the record on appeal.

¶ 16    In late April or early May 2017, the sheriff advised Patterson-Joseph and her children that they had to leave the residence, and the village shut off water service. On May 2, 2017, Billups-Dryer gave Patterson-Joseph a "landlord's five-days notice" terminating "the lease," which is included in the record on appeal. Billups-Dryer neither reimbursed Patterson-Joseph for the rent she paid nor expressed any intention of returning the money.

¶ 17    Billups-Dryer extensively cross-examined Patterson-Joseph, who stated that she had first met Billups-Dryer in 2012 or 2013. Patterson-Joseph did not know whether individuals named Gene and Ruby Okozi owned the residence or whether they received mail at the address, although "[s]omething might have been left on the doorstep." Prior to Patterson-Joseph renting the residence, Billups-Dryer informed her that the owner offered to " 'sign it over' " to Billups-Dryer. Patterson-Joseph eventually learned the residence was in foreclosure. An investigator visited the residence, and Billups-Dryer told Patterson-Joseph to tell anyone who came to the property that Patterson-Joseph was only "visiting."

¶ 18    Megan McGillivary testified that she was a foreclosure attorney who represented Fannie Mae. She identified orders approving and confirming the judicial sale of the residence from Ditech Financial LLC to Fannie Mae on October 18, 2016, which are included in the record on appeal. The order approving the judicial sale identifies "Andrea B. Milsap" as a defendant. As of October 18, 2016, Fannie Mae owned the residence, did not allow Billups-Dryer to rent the property or collect rent on its behalf, and did not permit Patterson-Joseph to live there.

¶ 19    In April 2017, McGillivary represented Fannie Mae in an eviction action involving the residence. McGillivary met Billups-Dryer, whom she identified in court, during the eviction proceedings; at that time, Billups-Dryer identified herself as Andrea B. Millsap. McGillivary explained to Billups-Dryer that she had been named in the earlier foreclosure action, which proceeded to completion, and that the property had been sold to Fannie Mae at a judicial sale.

¶ 20    On May 19, 2017, Patterson-Joseph informed McGillivary that she had been paying rent to an individual named Andrea Billups Millsap. Patterson-Joseph was "distraught, confused, [and] had a large number of questions about the status of the property." Patterson-Joseph negotiated a settlement for relocation assistance with Fannie Mae.

¶ 21    On cross-examination, McGillivary stated that Patterson-Joseph showed her cashier's or certified checks with Billups-Dryer's name on "at least two of them." Patterson-Joseph asked her why an eviction action had been filed, as she was paying rent. McGillivary did not know whether Fannie Mae held title to the residence prior to October 18, 2016.

¶ 22    The jury found Billups-Dryer guilty of theft, and the trial court denied Billups-Dryer's subsequent motion for a "directed verdict." Billups-Dryer retained an attorney for posttrial motions and sentencing. The trial court denied Billups-Dryer's motion for a new trial, and after a hearing, imposed two years' probation and ordered Billups-Dryer to pay restitution of $9000 to Patterson-Joseph. Billups-Dryer did not file a motion to reconsider sentence.

¶ 23    On appeal, Billups-Dryer argues that her waiver of counsel was ineffective because the trial court failed to admonish her pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984). She contends that, at the arraignment, before allowing her to waive her constitutional right to counsel, the trial court failed to explain the nature of the charges, the minimum and maximum sentences, and her right to an attorney and to an appointed attorney if she was indigent. To the first two points, Billups-Dryer argues that the trial court's statement that she had been charged with a "Class 3 felony," without any additional information, was not strict or substantial compliance with the rule.

¶ 24    As a threshold matter, Billups-Dryer acknowledges that she failed to raise this argument in a posttrial motion, thereby forfeiting the issue (see *People v. Sebby*, 2017 IL 119445, ¶ 48), but argues that this court may review the issue under the plain error doctrine or, alternatively, as ineffective assistance of posttrial counsel.

¶ 25    A defendant has a sixth amendment right to counsel at all critical stages of a prosecution, "including pretrial, trial, and sentencing." (Internal quotation marks omitted.) *People v. Vernon*,

396 Ill. App. 3d 145, 152-53 (2009). Because the right to counsel is fundamental, whether a trial court properly admonished a defendant under Illinois Supreme Court Rule 401 is reviewable under the second prong of the plain error doctrine. See *People v. Pike*, 2016 IL App (1st) 122626, ¶ 109; *People v. Black*, 2011 IL App (5th) 080089, ¶ 24. However, before we address whether Billups-Dryer's claim satisfies the plain error doctrine, she must first show that a clear and obvious error occurred. *Pike*, 2016 IL App (1st) 122626, ¶ 109.

¶ 26    An accused may waive her constitutional right to counsel, so long as the waiver is "voluntary, knowing, and intelligent." *People v. Haynes*, 174 Ill. 2d 204, 235 (1996) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). To that end, under Illinois Supreme Court Rule 401(a), a trial court shall not permit a defendant's waiver of counsel without first advising the defendant of certain information and confirming her understanding. This includes (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; and (3) that defendant has the right to counsel and, if she is indigent, to have counsel appointed by the court. Ill. S. Ct. R. 401(a) (eff. July 1, 1984); see also *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). The admonishments "must be provided at the time the court learns that a defendant chooses to waive counsel, so that defendant can consider the ramifications of such a decision." *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006).

¶ 27    Strict compliance with Rule 401(a) is not always necessary, and substantial compliance is sufficient if the record shows that the waiver was knowing and intelligent and that the admonishments the defendant received did not prejudice her rights. *People v. Eugene Wright*, 2017 IL 119561, ¶ 41. Substantial compliance occurs "when any failure to fully provide admonishments does not prejudice defendant because either: (1) the absence of a detail from the admonishments did not impede defendant from giving a knowing and intelligent waiver; or (2) defendant possessed

a degree of knowledge or sophistication that excused the lack of admonition." *Pike*, 2016 IL App (1st) 122626, ¶ 112. Whether a trial court failed to substantially comply with Rule 401(a) is a question of law that we review *de novo*. *Id.* ¶ 114. This court has never found substantial compliance with Rule 401(a) "when *no admonishments whatsoever* were given." (Emphasis in original.) *People v. Moore*, 2021 IL App (1st) 172811, ¶ 32.

¶ 28    Here, when Billups-Dryer informed the trial court during the arraignment that she would represent herself, the trial court apprised Billups-Dryer that she was charged with a "Class 3 felony" but did not inform her that she was charged with theft or explain the minimum and maximum sentence. Further, although the trial court made a passing reference to Billups-Dryer's "right to a lawyer," it did not determine that she understood such right or inform her she was entitled to appointed counsel if she was indigent. Thus, the trial court did not issue the admonishments required under Rule 401(a) when it granted Billups-Dryer leave to proceed *pro se*.

¶ 29    The trial court did advise Billups-Dryer of the problems she would face as a *pro se* litigant, including that she would receive no special consideration, as well as the advantages an attorney would have in defending her case. However, these admonishments are not a substitute for the required admonishments under Rule 401(a). See *People v. Seal*, 2015 IL App (4th) 130775, ¶ 31 (finding the trial court did not substantially comply with Rule 401(a) where it informed the defendant of problems he would face as a *pro se* defendant but did not admonish him in accordance with Rule 401(a)).

¶ 30    The State contends that the trial court substantially complied with Rule 401(a) because it informed Billups-Dryer that she was charged with "a Class 3 felony," and told her that it needed to question her because she was "trying to waive [her] right to a lawyer." See *People v. Wilbur Wright*, 2 Ill. App. 3d 304, 306 (1971) (the admonishment of the nature of the charge "does

not require the court to recite all the facts which constitute an offense"). Further, according to the State, the entire record establishes that Billups-Dryer understood the charge against her, was knowledgeable about the legal system and the proceedings, was adamant about proceeding *pro se*, and only requested "constitutional counsel" to assist her self-representation. See *Eugene Wright*, 2017 IL 119561, ¶¶ 55-57 (finding substantial compliance even though trial court misadvised defendant of potential maximum sentence for his armed robbery charge, and defendant did not allege that he would not have represented himself had he known possible maximum sentence).

¶ 31    We find the trial court's admonishments did not substantially comply with Rule 401. First, the trial court's bare reference to the fact that Billups-Dryer was charged with a "Class 3 felony" did not adequately describe the nature of the alleged offense. *Wilbur Wright*, cited by the State, is distinguishable because, there, the trial court admonished the defendant regarding a guilty plea, and during the plea proceedings, accurately referred to the charged offense as armed robbery. *Wilbur Wright*, 2 Ill. App. 3d at 305. Here, the trial court did not identify the charged offense by name prior to accepting Billups-Dryer's waiver of counsel. Although the trial court handed Billups-Dryer a copy of the information describing the charge, it did so after accepting her waiver. See *Jiles*, 364 Ill. App. 3d at 329 (explaining that Rule 401(a) admonishments must be given "at the time" a defendant waives the right to counsel so that the defendant can consider the ramifications of the decision); see also *Moore*, 2021 IL App (1st) 172811, ¶ 33 (warning against relying upon a defendant being "handed the indictment" to satisfy his or her awareness regarding the nature of the charges). In the end, prior to Billups-Dryer waiving counsel, the trial court did not inform her that she was charged with theft, explain the minimum and maximum sentence, or ensure she understood that she had the right to counsel. Accordingly, we cannot accept the State's argument that the trial court substantially complied with Rule 401(a).

¶ 32    The State relies upon *Eugene Wright* to argue that Billups-Dryer's degree of sophistication supports a finding of substantial compliance with rule 401(a). We acknowledge that Billups-Dryer displayed sophistication while defending her case, as shown by her pre-trial motions, responses to the State's motions, and cross-examination of witnesses. However, *Eugene Wright* is distinguishable. There, the supreme court relied upon the defendant's degree of sophistication in finding the trial court substantially complied with Rule 401 despite failing to inform the defendant accurately of the maximum possible sentence for the offense. *Eugene Wright*, 2017 IL 119561, ¶ 55. However, prior to the defendant's waiver, the trial court admonished the defendant regarding the nature of the charge, the sentencing range—including that he was eligible for an extended-term sentence—and his right to an attorney. *Id.* ¶ 51. Although the trial court misadvised the defendant of the actual maximum sentence, the supreme court found the trial court substantially complied otherwise, and the defendant was not prejudiced by the trial court's understatement of the maximum possible sentence. *Id.* ¶¶ 54-56.

¶ 33    Here, in contrast, Billups-Dryer did not receive any of the admonishments required by Rule 401(a) before waiving counsel. As noted, this court has never found substantial compliance where the trial court did not provide any admonishments required by Rule 401. See *Moore*, 2021 IL App (1st) 172811, ¶ 32; *Vernon*, 396 Ill. App. 3d at 152 n.2 ("The formality of compliance can be reduced if 'a defendant has a 'high level of sophistication.' [Citation.] Here, the defendant's filing suggests a degree of sophistication. However, the record suggests no compliance at all.")

¶ 34    The trial court's failure to comply with Rule 401(a) constitutes second-prong plain error. See *Jiles*, 364 Ill. App. 3d at 330. Therefore, we do not reach Billups-Dryer's further allegation of ineffective assistance of posttrial counsel.

¶ 35    Because Billups-Dryer proceeded *pro se* through trial without a valid waiver of counsel, her conviction must be reversed. See *Moore*, 2021 IL App (1st) 172811, ¶ 37. Before remanding for a new trial, however, we must consider whether another trial would violate double jeopardy. *Id*.

¶ 36    "Double jeopardy does not preclude retrial of a defendant whose conviction is supported by sufficient evidence but set aside because of errors in the trial process." *Jiles*, 364 Ill. App. 3d at 331. If the totality of the evidence presented at a defendant's first trial was sufficient for a rational trier of fact to find the essential elements of the crime had been proven beyond a reasonable doubt, retrial does not violate double jeopardy. *People v. Ward*, 2011 IL 108690, ¶ 50. Here, Billups-Dryer was charged with one count of theft by deception of between $500 and $10,000 in Patterson-Joseph's property. The State presented evidence that Billups-Dryer told Patterson-Joseph that she "obtained" the residence and that Patterson-Joseph could rent the residence from her for $1000 per month. Billups-Dryer, however, had been named in the foreclosure action on the residence, the residence was owned by Fannie Mae, and Billups-Dryer was not permitted to rent the property or collect rent on Fannie Mae's behalf. There was also evidence that Patterson-Joseph made regular rent payments to Billups-Dryer. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Billups-Dryer guilty of theft beyond a reasonable doubt. Therefore, no double jeopardy violation will occur upon retrial.

¶ 37    For the reasons stated above, we reverse Billups-Dryer 's conviction and remand for a new trial.

¶ 38    Reversed and remanded.