2020 IL App (1st) 172209-U

No. 1-17-2209

Order filed June 5, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 683 |
| | ) | |
| ANDREW KOZAR, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The order denying defendant's *pro* se pretrial motion to suppress and defendant's conviction and sentence for traveling to meet a minor are vacated, and the case is remanded where the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) in accepting defendant's waiver of the right to counsel.

¶ 2    Following a bench trial, defendant Andrew Kozar was convicted of traveling to meet a minor (720 ILCS 5/11-26(a) (West 2012)) and was sentenced to 30 months' imprisonment. Defendant had proceeded *pro se* for three pretrial motions but was represented by counsel at trial.

On appeal, defendant argues he did not make a knowing, voluntary, and intelligent waiver of his right to counsel during pre-trial proceedings, because the trial court did not completely and accurately admonish him as required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). We vacate the conviction and the trial court's order denying defendant's uncounseled pretrial motion to suppress and remand the matter for a new trial, including proper admonishments if necessary.[1]

¶ 3    Defendant was charged with one count of indecent solicitation of an adult and one count of traveling to meet a minor arising from his placing a Craigslist advertisement seeking sex with a minor, and his communications with and subsequent travel to meet a Cook County Sheriff investigator, who was posing as the father of an eight-year-old girl, between November 26, 2013 and December 3, 2013, for the purpose of having sex with the child. The indecent solicitation charge alleged defendant knowingly arranged for a person seventeen years or over, himself, to commit an act of sexual penetration with a person under the age of thirteen years. The traveling to meet a minor charge alleged he knowingly traveled to an address in Forest Park, Illinois, for the purpose of engaging in a sex offense with another person believed by defendant to be a child, after communicating by means of email and text message with a person he believed to be the child's guardian to solicit that person for defendant to commit an act of sexual penetration with the child.

¶ 4    During preliminary proceedings, defendant was represented by an assistant public defender. In a September 2014 letter to the court raising concerns about his counsel, defendant stated "if not given a fair trial [he] will be behind bars for the rest of [his] life." Defendant also

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

indicated the assistant public defender "refuse[d]" to address certain allegedly exonerating evidence, and stated he "would love to be able to present this in motions so this case can be dismissed [sic] and the proper person charged."

¶ 5     On October 2, 2014, during a status hearing, defendant requested he receive new counsel because of a "conflict" with his assistant public defender, where certain information he provided her, including a confession of a person who "set [him] up," "ha[d] never been brought * * * to the State." Defendant also expressed concerns with the number of times the case had been continued. The court requested defendant "hold off" with regard for his request for new counsel, and explained the case had been continued by agreement of the parties so that discovery could be tendered to defense counsel.

¶ 6     On June 11, 2015, defense counsel engaged in a colloquy with the court regarding scheduling of a motion to suppress statements. Defendant directly addressed the court and requested "to go *pro se* so [he could] handle this case probably in a quicker manner." The court asked defendant whether he knew what a motion to suppress was and the grounds for the motion, and defendant responded he believed "things were under duress, Miranda rights waiving." Defendant stated he wanted to proceed *pro se* because his counsel had been lying to him, and "refused to straighten out certain things that the State is making inaccurate statements about." The court requested defendant be evaluated to determine his fitness to represent himself. Following a psychiatric evaluation, he was found fit to represent himself.

¶ 7     On October 14, 2015, the court asked defendant again whether he wished to represent himself, and defendant indicated he did. The court told defendant he would treat him as if he were a lawyer and would not be able to advocate for him in any way. Defendant stated, "[o]ver the

course of last 22 months with the case, I have done a lot of research in the law library as well as the Freedom of Information Act and I have come across a lot of inconsistencies." The court admonished defendant that his attorney would better be able to advise regarding strategy and procedure and asked defendant if he understood. Defendant stated he did. The following colloquy then took place:

"THE COURT: Under those circumstances, I'm going to allow you to continue to represent yourself. I'm going to ask [defense attorney] to tender back to the State all of the discovery.

If you want a date that you can organize the whole packet of discovery for him, we will give it that date.

[THE STATE]: Sure.

THE COURT: There's not standby counsel. There's nobody here. It's going to be you. And if that's what you want to do, it is, I suppose within your right. And without looking at the file here, the possible penalties are what here.

[THE STATE]: *** we did previously make him an offer of four years IDOC on the Class 3 traveling offense, and that would require ten years of registration as a sex offender. That is hereby revoked.

* * *

THE STATE: In answer to your question, you asked what he was currently charged with. He's charged with a Class X offense, which would involve 6 to 30 years in IDOC, if he's convicted on that count. He's also charged with a Class 3 traveling offense as well."

¶ 8      Defendant subsequently filed three *pro se* motions with the court: a motion to dismiss for failure to state an offense; a motion for reduction of bail; and a motion to quash arrest and suppress evidence (motion to suppress). In his motion to dismiss, citing analogous case law and legislative intent, defendant argued the indecent solicitation of an adult charge should be dismissed as it applied only to the offender who arranges a sexual act for another adult to perform, and thus was applicable to the eight-year-old's father and not to defendant. Defendant argued in his motion to suppress that the arresting police officers did not have either an arrest warrant or probable cause to arrest him. In defendant's motion for reduction of bail, defendant argued the set bail was excessive and he lacked the funds possible to meet it.

¶ 9      The court denied the motion to dismiss and motion to reduce bail after a hearing and continued the motion to suppress. At the hearing on the motion to suppress, defendant stated in his opening statement that the "evidence is very key," and planned to proceed by means of cross-examining the State's witnesses rather than call his own witnesses to testify. The court informed defendant he was required to present witnesses as he had the burden, and the State had no obligation to call any witnesses. Defendant then chose to testify on his own behalf. After being sworn, he testified in a narrative format that he worked all day on the date of the incident without access to a phone or internet, did not have any parking infractions, and had been arrested by the police for no reason. Defendant testified that his ex-wife also had access to his vehicle and, on the day of the incident, he traveled to the scene because he was meeting his ex-wife's friend in order to get textbooks for her to use in going back to school in the fall. He was sitting in the car waiting when the police officers approached him with their guns drawn. Defendant testified the only calls he had on his phone were to a Five Guys restaurant corporate line.

¶ 10    The State cross-examined defendant extensively. On cross-examination, defendant stated the email address the State had was his correct email and denied that the cell phone number was in his name and that he normally used it. Defendant stated he did not take his phone to work with him but found his ex-wife's phone in the cup holder in his car. Defendant also acknowledged he placed the phone he found in the car in his pocket. Defendant stated he was familiar with Craigslist and had used it to place advertisements in the past using his personal email address. Defendant acknowledged the police asked him for his consent to search his phone and car, but denied giving them consent. He denied the signatures on the consent to search forms for the phone and car were his. Defendant identified himself in photographs the State presented for identification. Defendant requested suppression of the contents of the cell phone recovered from his person, the statements which he allegedly made to police officers, and the consent to search forms. Before resting, defendant asked to call Officer Cruz as a witness, but the court denied his request because Cruz was not on defendant's list of witnesses.

¶ 11    The State called Anthony Stack, an investigator with the Cook County Sheriff's Child Exploitation Unit and another investigator, and defendant cross-examined the witnesses. The investigators testified to their process for investigating the case. Stack testified that he contacted the poster of a Craigslist advertisement asking to have sex with a minor. Pretending to be the father of an eight-year-old girl, he arranged a meeting with the poster for the purpose of the poster engaging in sexual penetration with the girl. Stack and the poster communicated via personal emails and text messages, with the poster using defendant's email address and phone number. The poster sent Stack his photograph, and Stack verified the photograph matched defendant. On December 3, 2013, Stack and the poster arranged to meet in Forest Park. On that date, police

officers arrested defendant at the meeting place. Stack identified his signature along with defendant's signature on the consent to search forms.

¶ 12    During defendant's closing argument, he attempted to withdraw his motion to quash arrest and suppress evidence. The court instead denied the motion, finding the officers had probable cause to arrest defendant where they waited until he appeared on the scene to arrest him and confirmed it was defendant who sent the communications. After the court ruled on defendant's motion to suppress, defendant requested counsel once more, and the Office of the Public Defender was again appointed to represent him.

¶ 13    The case proceeded to trial, where the evidence showed defendant posted an advertisement on Craigslist which read:

"Ever had a fantasy of watching a guy f*** your niece, sister, young gf/wife or daughter? I'd like to make that come true. Im [sic] 27. Five foot 6. Six inches, thick. Up for anything. Love to eat and get oral. open to age on her. Any questions just ask. I can host"

¶ 14    Stack came across this advertisement on November 26, 2013. Because the body of the advertisement included items of investigative significance, Stack posed as the father of an eight-year-old girl and contacted the person who posted the advertisement, exchanging emails, text messages, and phone calls with the poster. Throughout the course of the communications, the poster indicated he wanted to perform sexual acts with the child and attempted to arrange a meeting several different times. Subpoenaed business records showed the email address and phone number were registered to defendant. The poster sent Stack a photograph of himself, which matched the photograph on the copy of defendant's driver's license obtained by Stack during his investigation.

¶ 15    Stack and the poster eventually arranged to meet on December 3, 2013, at a Forest Park address Stack provided. When the poster phoned and asked to speak to Stack's "daughter" for "voice verification," Stack put his partner, Investigator Jacqueline Lazarra, on the line to pose as the girl. When defendant arrived at the scene, he was arrested, and his cellular telephone was recovered. He matched the photo sent by the poster and his cell phone had the same number as that used by the poster.

¶ 16    At the police station, defendant initially told police he had gone to the Forest Park address to meet with a friend. He then told the officers he placed the Craigslist advertisement and had communicated with the eight-year-old's father "because he wanted to catch pedophiles," and intended to call police once he knew the child was "real." Defendant also told the officers he was molested by his father when he was younger and, because he performed oral sex on a man, he would be going to hell. He subsequently told the officers his statement about catching pedophiles was a lie, and that he had gone to meet the child because he wanted to be punished "for all the bad things that had happened to him in his life."

¶ 17    The State entered into evidence screenshots of the Craigslist advertisement, emails, text messages, and phone records. Defendant, through counsel, moved for a directed finding as to both counts against him. Regarding the indecent solicitation of an adult charge, defendant argued that the conduct alleged in the case did not fall within the parameters of the charge, because indecent solicitation of an adult applies only to the individual arranging the sexual act, "the pimp," rather than the individual consummating the sexual act. Defendant cited to the statutory language and legislative history of the statute. The court denied defendant's motion for a directed finding as to both counts.

¶ 18    Defendant argued in closing that the State did not prove defendant's intent in posting the Craigslist advertisement. The court found defendant guilty of traveling to meet a minor. It found him not guilty of indecent solicitation of an adult, ruling the language of the solicitation statute and legislative intent indicates the offense applies to the "pimp" in the encounter, rather than to defendant. The court subsequently denied defendant's motion for a new trial and sentenced defendant to 30 months' imprisonment. Prior to sentencing, the court acknowledged defendant had no prior criminal history.

¶ 19    On appeal, defendant argues this court should vacate his conviction and sentence and order a new trial on the traveling to meet a minor count because the trial court failed to admonish him under Illinois Supreme Court Rule 401(a) when it granted his request to represent himself during crucial motions including his motion to dismiss and motion to suppress, which were both litigated and denied by the trial court. Defendant argues "there was no compliance, substantial or otherwise," with the procedural safeguards under Rule 401, and requests his conviction be vacated.

¶ 20    As an initial matter, defendant acknowledges that he failed to raise this argument in a posttrial motion, thereby forfeiting the issue (see *People v. Sebby*, 2017 IL 119445, ¶ 48), but argues that this court may review the issue under the plain error doctrine.

¶ 21    A defendant has a sixth amendment right to counsel at all "critical stages" of a prosecution. *People v. Vernon*, 396 Ill. App. 3d 145, 152-53 (2009). Because the right to counsel is fundamental, the issue as to whether a trial court did not properly admonish a defendant under Illinois Supreme Court Rule 401 is reviewable under the second prong of the plain error doctrine. See *People v. Pike*, 2016 IL App (1st) 122626, ¶ 109; *People v. Black*, 2011 IL App (5th) 080089, ¶ 24. However,

before we address whether defendant's claim satisfies the plain error doctrine, he must first show a clear and obvious error occurred. *Pike*, 2016 IL App (1st) 122626, ¶ 109.

¶ 22    An accused may waive his constitutional right to counsel, so long as the waiver is voluntary, knowing, and intelligent. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). To that end, under Illinois Supreme Court Rule 401(a), a trial court shall not permit a defendant's waiver of counsel without first addressing the defendant in open court and informing him of and determining that he understands: (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; and (3) that defendant has the right to counsel and, if he is indigent, to have counsel appointed for him by the court. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). Here, defendant argues the court did not comply with any of the requirements of Rule 401(a), and therefore his waiver of counsel was not knowing and voluntary.

¶ 23    Strict compliance with Rule 401(a) is not always necessary, and substantial compliance is sufficient if the record shows that the waiver was knowing and intelligent and that the admonishments defendant received did not prejudice his rights. *Haynes*, 174 Ill. 2d at 236. This court has recognized two categories of substantial compliance. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 112. Substantial compliance occurs "when any failure to fully provide admonishments does not prejudice defendant because either (1) the absence of a detail from the admonishments did not impede defendant from giving a knowing and intelligent waiver; or (2) defendant possessed a degree of knowledge or sophistication that excused the lack of admonition." *Id.* The admonishments given by the court "must be provided at the time the court learns that a defendant chooses to waive counsel, so that defendant can consider the ramifications of such a decision."

*People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006). There is no effective waiver of counsel without proper admonitions. *People v. Langley*, 226 Ill. App. 3d 742, 749 (1992).

¶ 24    In this case, the trial court did not give defendant any of the required Rule 401(a) admonishments before accepting his waiver of counsel. Our review of the record on appeal shows the court did not provide defendant with any of the admonishments during the hearing in which it granted defendant leave to proceed *pro se*. Nor did it give defendant the admonishments at any court date prior to the date defendant waived counsel, despite defendant's continued insistence upon representing himself. As defendant notes, the record indicates at most that he understood he had a right to counsel, because he had been represented by a public defender for almost two years before the trial court accepted his waiver of counsel. See *People v. Phillips*, 392 Ill. App. 3d 243, 264 (2009) (considering defendant's prior representation by appointed counsel as one factor in finding the court's substantial compliance with Rule 401(a)). However, the court did not apprise him of the charges and minimum and maximum sentences he faced.

¶ 25    The court did determine defendant's fitness to represent himself based on the findings of a psychiatrist and licensed clinical psychologist who evaluated defendant, reviewed his use of psychotropic medication to manage his mental illness, and found him fit to represent himself with medications. It also advised defendant of the problems he would face as a *pro se* defendant, including the fact that the court would treat defendant as an attorney and an attorney would better be able to advise regarding trial strategy. However, these admonishments are not a substitute for the required admonishments under Rule 401(a), which the trial court completely failed to provide. See *People v. Seal*, 2015 IL App (4th) 130775, ¶ 31 (ruling the court did not substantially comply

with Rule 401(a) where the court informed the defendant of the problems he would face as a *pro se* defendant but did not admonish him in accordance with Rule 401(a)).

¶ 26    Further, while the trial court did ask the State what charges and sentence defendant faced, it did so immediately after accepting defendant's waiver of counsel. The court was required to admonish defendant before accepting his waiver, when it learned he wanted to waive counsel, so that he could consider the ramifications of his choice. See *Seal*, 2015 IL App (4th) 130775, ¶ 31; *Jiles*, 364 Ill. App. 3d at 329. There is no possibility defendant could consider the ramifications of his choice to waive counsel given he was informed of this necessary information after the court had already accepted his waiver.

¶ 27    The record indicates defendant demonstrated a degree of sophistication regarding the arguments raised in his motion to dismiss, especially given that counsel successfully raised the same argument at trial. See *Vernon*, 396 Ill. App. 3d at 152 n.2 ("The formality of compliance can be reduced if 'a defendant has a "high level of sophistication." ' " (Citations omitted.)). However, defendant clearly had little legal sophistication regarding his burden of proof in arguing his motion to suppress, because he did not know it was his burden as the movant to call witnesses or present his own evidence. Further, defendant's legal sophistication notwithstanding, we cannot consider whether the court substantially complied with Rule 401(a) where the trial court failed to comply with the rule whatsoever. See *id*. (noting that, "Here, the defendant's filing suggests a degree of sophistication. However, the record suggests no compliance at all.") We, therefore, find the trial court did not comply with Rule 401(a), substantially or otherwise. See *People v. Moore*, 2014 IL App (1st) 112592-B, ¶ 41.

¶ 28 "The sixth amendment right to counsel applies to all 'critical stages' of the prosecution, 'including pretrial, trial, and sentencing.' " *Vernon*, 396 Ill. App. 3d at 153 (quoting *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991)). Here, defendant represented himself for three *pro se* motions: a motion to reduce bond, a motion to dismiss, and a motion to suppress. Defendant makes no argument that the motion to reduce bond was at a critical stage of the proceedings and therefore has forfeited such arguments. *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) ("Consistent with the plain language of [Rule 341(h)(7)], this court has repeatedly held that the failure to argue a point in the appellant's opening brief results in forfeiture of the issue.").

¶ 29 A motion to dismiss may be a critical stage because it "places a defendant in a position where he or she is likely to make admissions" or frame issues in a way that will have lasting consequences, and thereby lose substantial rights in pursuing the motion. *Vernon*, 396 Ill. App. 3d at 154. The denial of the motion to dismiss did result in framing the issues and the introduction of evidence at defendant's trial and the motion was a critical stage of the proceedings.

¶ 30 Under the particular circumstances of this case, this is also the case where defendant represented himself on the motion to suppress, where he testified on his own behalf and was cross-examined extensively by the State. Defendant implied in the motion that his ex-wife had been impersonating him. During the hearing, evidence was adduced regarding his email address, cell phone, use of Craigslist, and presence at the scene of the crime. Defendant's uncounseled motion and testimony, including his admissions and his framing of the issues of the case, had the potential to have "lasting consequences" with respect to his trial. See *id.* at 154; *Black*, 2011 IL App (5th) 080089, ¶¶ 26-27 ("the pretrial nature of preliminary hearings makes the presence of counsel vital

to the defendant's development of his case"). Thus, denial of the motion to suppress was a critical stage of the proceedings. See *Vernon*, 396 Ill. App. 3d at 154.

¶ 31     In this case, " '[i]t is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings' because a court would have to 'speculate upon what effect those different choices or different intangibles might have had.' " *Moore*, 2014 IL App (1st) 112592-B, ¶ 42 (quoting *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 150-151). "[N]o stage of the proceedings stands alone but instead earlier stages influence not just what follows but also that which is well removed." *Id*. Accordingly, because defendant was deprived of his right to counsel during critical stages and the overall impact of proceeding without counsel would be purely speculative, he is entitled to the vacation of his conviction and sentence without the necessary showing that the deprivation caused him prejudice. See *Vernon*, 396 Ill. App. 3d at 152-153. Because defendant lacked counsel at critical stages of the proceedings, he is "entitled to a new trial unaffected by uncounseled choices" he made in his *pro se* motions. *Id*. at 154 (finding the defendant could not give a proper waiver of his right to counsel where he did not receive Rule 401(a) admonishments before representing himself on an unsuccessful pretrial motion to dismiss but was represented by counsel at trial).

¶ 32     For the reasons stated above, we vacate defendant's conviction and sentence on the traveling to meet a minor count and the order entered on his uncounseled *pro se* motion to suppress. On the grounds of mootness, we do not vacate the orders denying the motion to reduce bond as the circumstances surrounding bond have now changed and the motion to dismiss as that motion related to the charge for which defendant was found not guilty. See *In re Marriage of Benjamin*, 2017 IL App (1st) 161862, ¶ 28 ("the existence of a real controversy is a prerequisite to the exercise

of our jurisdiction"). We hereby remand the matter for a new trial on the traveling to meet a minor count, including, potentially, Rule 401(a) admonishments and the filing of any appropriate new motions. *Id.*

¶ 33 Since we are remanding the case for a new trial, we must consider whether another trial on the matter would violate the double jeopardy clause. *Id.* at 330-31. "Double jeopardy does not preclude retrial of a defendant whose conviction is supported by sufficient evidence but set aside because of errors in the trial process." *Id.* at 331. If the totality of the evidence presented at defendant's first trial was sufficient for a rational trier of fact to find the essential elements of the crime had been proven beyond a reasonable doubt, retrial does not cause a double jeopardy violation. *People v. Ward*, 2011 IL 108690, ¶ 50. Here, reviewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found defendant guilty of the traveling to meet a minor offense beyond a reasonable doubt. Therefore, no double jeopardy violation will occur upon retrial.

¶ 34 For the reasons stated above, we vacate defendant's conviction and sentence, vacate the trial court's order denying defendant's uncounseled motion to suppress, and remand the matter for further proceedings consistent with this decision, specifically for a new trial on the traveling to meet a minor count, including, potentially, Rule 401(a) admonishments and the filing of any appropriate new motions.

¶ 35 Vacated and remanded.