NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190280-U

NO. 4-19-0280

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MAURICE LEVELL THOMAS, | ) | No. 18CF251 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Pursuant to *Anders v. California*, 386 U.S. 738 (1967), the appellate court granted counsel's motion to withdraw on direct appeal because no meritorious issues could be raised and affirmed the trial court's judgment.

¶ 2        In September 2018, a jury found defendant, Maurice Levell Thomas, guilty of driving while license revoked and obstructing identification. In January 2019, the trial court imposed court costs on the obstruction of identification charge and four years' imprisonment on the driving while license revoked charge. Defendant filed a motion to reconsider his sentence. The court corrected a sentence credit issue and declined to change defendant's sentence. Defendant appealed.

¶ 3        On appeal, the Office of the State Appellate Defender (OSAD) filed a motion to withdraw. In its brief, OSAD contends that no meritorious issues can be raised on appeal. We agree, grant OSAD's motion to withdraw as counsel, and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5           On March 8, 2018, defendant was arrested and the next day was charged by

information in McLean County case No. 18-CF-251 for driving on a revoked license and

obstructing identification.  Defendant was released from jail on March 12, 2018, after posting

bond, and a grand jury indicted him on the offense of driving on a revoked license.

¶ 6                              A. Pretrial Proceedings

¶ 7           Defendant's arraignment on both charges was scheduled for March 30, 2018, but

the trial court postponed the arraignment due to concerns about defendant's fitness.  The court,

over defendant's objection, appointed an attorney to represent defendant for the fitness

proceedings and ordered a fitness evaluation.  In May 2018, the court held a fitness hearing and

stated it considered the psychiatric evaluation done by Dr. Terry M. Killian.  Neither the State

nor defense counsel submitted additional evidence or argument about defendant's fitness.  The

court asked defendant if he understood the roles of the prosecutor, defense counsel, and the

court, the charges against him, and the difference between a bench and jury trial.  During

questioning, the court noted Dr. Killian's professional opinion that defendant was not fit to stand

trial.  The court found defendant unfit for trial and remanded him to the custody of the Illinois

Department of Human Services (IDHS) for treatment.

¶ 8           The trial court received three progress reports on defendant's condition.  In July

2018, the court held a restoration to fitness hearing.  Neither the State nor defense counsel

objected to the court considering a July 10, 2018, report from IDHS on defendant's return to

fitness.  Neither party submitted additional evidence.  The court asked defendant if he understood

the roles of the prosecutor, defense counsel, and the court, the charges against him, and the

evidentiary burden the State had to meet to convict him. The court held, based on the IDHS report and defendant's answers, that defendant had been restored to fitness.

¶ 9        Following the restoration to fitness hearing, the trial court conducted the arraignment hearing. Defendant immediately indicated he wished to represent himself. The court read defendant the felony offense of driving while license revoked or suspended and informed defendant of the minimum and maximum penalties, including the fact he was eligible for an extended term of six years' imprisonment. The court also read defendant the felony offenses he was charged with in McLean County case Nos. 17-CF-1147, 18-CF-97, and 18-CF-460.

¶ 10        The trial court asked defendant a series of questions and learned he was 32 years old, had a high school diploma, had completed some community college classes, was familiar with the legal process, and had never represented himself before. Defendant understood he would have to follow the rules of evidence and procedure and would be held to the same standards as an attorney experienced with those rules. Defendant also understood he might be at a disadvantage because he was not an attorney, he would not get extra time in the jail library because he was representing himself, and he would not automatically get an attorney if he changed his mind. The court found defendant competent to represent himself and discharged appointed counsel.

¶ 11        Defendant appeared at pretrial hearings where he filed petitions asserting he legally changed his name and a variety of other legal errors. The petitions also asserted defendant was "Asiatic Moorish American," the court lacked jurisdiction, and federal, state, and local laws did not apply to him. The State elected to first proceed on McLean County case No. 18-CF-251, and the trial court informed defendant it would rule on his filings before the trial.

¶ 12            Before jury selection, the trial court reviewed defendant's petitions and construed

them as a motion to dismiss for lack of jurisdiction.  The court found the incident charged

occurred in McLean County on March 8, 2018, and ruled it had both subject matter and personal

jurisdiction.  The court further barred defendant from making any argument to the jury that the

laws of the United States or Illinois did not apply to him, indicating defendant would face the

possibility of being held in direct criminal contempt if he attempted to make such an argument to

the jury.  Defendant was allowed to file additional petitions, which the court denied as

duplicative of the petitions the court just ruled on or as irrelevant to the trial.  Finally, the court

granted the State's motion to use past convictions from 2013 for criminal trespass to a residence

and possession of a controlled substance to impeach defendant if he chose to testify.

¶ 13                                    B. Jury Trial

¶ 14            During jury selection, the trial court asked the potential jurors a variety of

questions about whether they knew the parties, knew about the case, and their past jury service.

The court read the principles articulated in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062

(1984), to the potential jurors and each person answered, "yes," when the court individually

asked if they understood accepted the principles.  Defendant did not object to the court reading

the fourth principle when asked before the jury pool was brought into the courtroom.  The court

gave the State and defendant the opportunity to question the potential jurors.

¶ 15            The trial court granted the State's motion to strike a juror for cause where she

stated she would favor a law enforcement witness.  The court struck another juror for cause

because he was a party to an open court case.  The court denied defendant's motions to strike

three jurors for cause because they all stated they could be fair and impartial jurors.  Both the

State and defendant used peremptory challenges before deciding on the final jurors, none of whom were the three potential jurors defendant asked to strike for cause.

¶ 16 Following jury selection, the State presented its sole witness. Ryan Ritter, a police officer with the Normal Police Department, testified that on March 8, 2018, he was working the first shift from 7 a.m. to 3 p.m. Ritter was assigned to patrol for criminal activity and traffic offenses, and to respond to calls for service in a marked squad car. While on patrol, Ritter observed the driver of a van who was not wearing a seat belt. According to Ritter, the driver gave him a suspicious look as he passed so Ritter turned around to follow the van. Ritter noticed the van had an expired registration sticker, so he started to call in a traffic stop on his radio. The van went down a side street, and Ritter ran the registration and confirmed it was expired. Ritter identified defendant as the driver of the van. Ritter testified that when he first noticed the van, the driver wore a cylinder-shaped fez with a tassel on top.

¶ 17 After Ritter initiated a traffic stop, the driver stopped on Fell Avenue and exited the vehicle. Ritter introduced himself and explained the reason for the traffic stop. According to Ritter, he asked for a driver's license or identification and inquired if the driver was aware the vehicle registration was expired and of his failure to wear a seat belt. Defendant refused to provide Ritter a driver's license. Ritter then asked for defendant's name, and defendant told him his name was Mauri L. Bay and gave Ritter a birthdate. Ritter attempted to construct a driver's license abstract, but the name and birthdate came back with no record. Defendant also stated his name was Mauri Elbay, which also resulted in no driver's license information from the Secretary of State.

¶ 18 Ritter testified he noticed defendant had an identification card in his pocket and asked to see it. Defendant reluctantly provided the card, which identified him as Maurice L.

Thomas. According to Ritter, the photograph on the identification card matched defendant. Ritter testified he checked the identification card with the Secretary of State and learned defendant's driving status had been revoked. Based on defendant providing a fake name and having a revoked driver's license, Ritter took defendant into custody without incident.

¶ 19 Ritter identified a certified copy of defendant's driver's abstract showing his license revoked on the day of the traffic stop. The court admitted the copy into evidence. The court also admitted a video recording of the traffic stop from the recording system in Ritter's squad car. The State published parts of the video showing the initial pursuit of the van, the first conversation between Ritter and defendant, and the instance where Ritter retrieved the identification card from defendant's pocket. The State then rested its case.

¶ 20 When asked if he intended to present evidence, defendant sought to introduce eight exhibits into evidence. The exhibits included documents identifying defendant as Mauri Bey, defendant's declaration of allegiance to a society, where defendant derived his indigenous name, the pedigree of defendant's ancestral bloodline, and the various rights defendant claimed as an indigenous person. The court denied admission of defendant's exhibits because they all argued the law and were irrelevant. Defendant did not testify or offer any other evidence.

¶ 21 C. Jury Instructions and Verdict

¶ 22 During the jury instruction conference, the trial court repeatedly asked defendant if he wanted the court to give Illinois Pattern Jury Instruction, Criminal, No. 2.04 (4th ed. 2000) (hereinafter IPI Criminal No. 2.04). Defendant refused to answer, and the court declined to give the jury IPI Criminal No. 2.04. The court gave two non-pattern instructions outlining the definition and elements of obstructing identification because no pattern instructions existed, and

the offered instructions correctly stated the law. The jury found defendant guilty of driving while license revoked and obstructing identification.

¶ 23                                    D. Posttrial Proceedings

¶ 24         After defendant's trial, appointed counsel on defendant's other cases filed a petition to appoint an expert to determine fitness to stand trial. In December 2018, the trial court held a fitness hearing and admitted a report by Dr. Killian of a psychiatric evaluation conducted in November 2018. Dr. Killian concluded defendant was fit to stand trial, though he had some reservations coming to this conclusion. In his report, Dr. Killian wrote as follows: "While [defendant] almost certainly has a psychotic set of beliefs, for the most part, these do not appear to be interfering in his functioning. There are certainly some people with strong anti-government perspectives who are not delusional, and perhaps this is where [defendant] fits (though I am skeptical about this)." Dr. Killian further noted defendant behaved rationally in a recent jury trial.

¶ 25         At the fitness hearing, the State noted Dr. Killian did not appear to be familiar with sovereign citizens and attributed defendant's belief system to delusional behavior. The State suggested Dr. Killian should testify if the trial court had further concerns. Defense counsel noted the court could also question defendant about his fitness but ultimately agreed with Dr. Killian's conclusion that defendant was fit to stand trial. The court questioned defendant about his jury trial and the roles of defense counsel, the prosecutor, and the judge.

¶ 26         The trial court noted it reviewed Dr. Killian's report and had spent considerable time in person with defendant. The judge stated defendant conducted himself appropriately during his recent jury trial and abided by the court's directives. The court further noted defendant had behaved appropriately at the fitness hearing. The court found defendant fit and

stated it believed defendant understood the proceedings and everyone's role in the proceedings. Defendant again indicated he wished to represent himself. After appropriately questioning and admonishing defendant, the court allowed him to proceed *pro se*.

¶ 27 Prior to sentencing, defendant filed several petitions similar to his pretrial filings. The trial court concluded the petitions duplicated the pretrial petitions it previously ruled on. The court construed the newly filed petitions as a posttrial motion alleging the court erred in ruling on the pretrial motions. The court denied the petitions.

¶ 28 At sentencing, the State argued defendant should receive a four-year sentence of imprisonment on the driving while license revoked conviction because this was his seventh conviction for that offense. Additionally, the State argued defendant had an extensive criminal history and that defendant failed to comply with probation on numerous prior occasions. Defendant stated his rights had been ignored and he disagreed with the proceedings.

¶ 29 On the obstructing identification charge, the trial court imposed court costs and the conviction. On the driving while license revoked charge, the court imposed a four-year sentence of imprisonment, finding that a sentence of probation or conditional discharge would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. The court noted defendant was unlikely to comply with a community-based sentence and had previously failed to complete other community-based sentences. Additionally, the court noted defendant's extensive prior record and found defendant's imprisonment necessary to protect the public. The court also awarded defendant three days' credit and admonished him of his right to appeal, including the need to file a motion to reconsider if he wished to challenge his sentence.

¶ 30 After sentencing, defendant filed several documents, one of which asked the trial court to reconsider his sentence. At a February 2019 status hearing, the court set a date to hear

the motion to reconsider and appointed an attorney at defendant's request. Defense counsel filed an amended motion to reconsider the sentence, arguing defendant's sentence was excessive and that he was due additional days of credit. Defense counsel argued defendant was entitled to credit for the entire period from May 2, 2018, when he was remanded to IDHS custody to January 14, 2019, when he was sentenced. The State conceded defendant was entitled to additional credit days, but it argued defendant's sentence was appropriate. The court granted defendant 368 days' credit but declined to reduce defendant's four-year sentence.

¶ 31                                    II. ANALYSIS

¶ 32         On appeal, OSAD filed a motion to withdraw, contending no meritorious issues can be raised. Counsel considered raising the following issues: (1) whether the State proved defendant guilty beyond a reasonable doubt, (2) whether error occurred in selecting or instructing the jury, (3) whether the court erred by determining defendant was fit to stand trial, (4) whether the court erred in determining defendant could represent himself at trial and sentencing, and (5) whether the court abused its discretion in sentencing defendant to a four-year term of imprisonment.

¶ 33                          A. Sufficiency of the Evidence

¶ 34         A defendant may only be convicted upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). When determining the sufficiency of the evidence supporting a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we must resolve " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*,

106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We allow all reasonable inferences in the light most favorable to the State.  *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011).  It is the province of the finder of fact to determine the credibility of a witness, and the finding is entitled to great weight.  *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999).  We reverse only where the evidence is so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt as to the defendant's guilt.  *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 35          Here, defendant was convicted of driving on a revoked license and obstructing identification.  For the offense of driving while license revoked, the State was required to prove defendant drove a motor vehicle on a highway in Illinois and at that time his driver's license had been revoked as provided by the Illinois Vehicle Code.  See 625 ILCS 5/6-303(a) (West 2018).  For obstructing identification, the State was required to prove that defendant intentionally and knowingly furnished a false or fictitious name to a peace officer who had lawfully arrested or detained him.  See 720 ILCS 5/31-4.5(a) (West 2018).

¶ 36          Ritter testified he observed a van driven by a man wearing a tasseled cylindrical fez who was not wearing a seat belt.  When Ritter followed the van, he noticed the registration sticker was expired.  In open court, Ritter identified defendant as the driver of the van and testified that during the traffic stop, defendant initially identified himself as "Mauri L. Bay" and "Mauri Elbay."  Ritter was unable to find a driving record under either name, but he did find a driving record under the name Maurice Thomas, which was the name on the identification card found in defendant's pocket.  The State introduced a certified copy of defendant's driving abstract showing his driver's license was revoked on the day of the stop.  Ritter also identified

and explained a video from his squad car dashboard camera showing him following the van, stopping the van, talking to defendant, and arresting defendant.

¶ 37       The identification of a defendant by a single witness, if positive and credible, is sufficient to sustain a conviction. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). Considering the evidence in the light most favorable to the State, we conclude a rational trier of fact could find that defendant was the driver of the van, his license was revoked, and he furnished a false or fictitious name when Ritter asked for his name. Accordingly, we agree with OSAD there is no non-frivolous basis on which to challenge the sufficiency of the evidence against defendant.

¶ 38                     B. Jury Selection and Instruction

¶ 39       "The constitutional right to a jury trial guarantees to a criminal defendant a fair trial by an impartial jury, and the failure to provide a criminal defendant a fair trial violates the minimal standards of due process." *People v. Stremmel*, 258 Ill. App. 3d 93, 112-13, 630 N.E.2d 1301, 1314 (1994) (citing *Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965)). The purpose of *voir dire* is to secure an impartial jury. *People v. Peeples*, 155 Ill. 2d 422, 462, 616 N.E.2d 294, 313 (1993). Impartiality is a state of mind, and a potential juror's "state of mind must be ascertained from statements made by the venireperson, given the weight to which they are entitled under the circumstances." *Id.* During *voir dire*, the trial court asks potential jurors questions it finds appropriate to ascertain the potential jurors' qualifications to serve on the jury. Ill. S. Ct. R. 431(a) (eff. July 1, 2012). In addition, the trial court must ask all potential jurors if they understand and accept the following principles: "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to

- 11 -

offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 40    Here, the trial court asked the potential jurors a variety of questions about whether they knew the parties, knew about the case, and their past jury service. The court read the *Zehr* principles to the potential jurors, and each person answered, "yes," when the court individually asked if they understood and accepted the principles. Defendant did not object to the court reading the fourth principle when asked before the jury pool was brought into the courtroom. The court gave the State and defendant the opportunity to question the potential jurors.

¶ 41    The trial court granted the State's motion to strike a juror for cause where she stated she would favor a law enforcement witness. The court struck another juror for cause because he was a party to an open court case. The court denied defendant's motions to strike three jurors for cause because they all stated they could be fair and impartial jurors. Both the State and defendant used peremptory challenges before deciding on the final jurors.

¶ 42    Here, the jurors were properly advised of the *Zehr* principles and defendant had the opportunity to question the potential jurors about any bias. The only potential juror who stated she would favor law enforcement witnesses was struck for cause. Additionally, the three potential jurors defendant asked to strike for cause did not end up serving on the jury. Accordingly, we agree with OSAD there is no non-frivolous basis to argue defendant's jury was not impartial.

¶ 43    OSAD also considered raising an issue as to whether the jury was properly instructed. A defendant is denied his constitutional right to a fair trial if the jury is not properly instructed. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 23, 22 N.E.3d 114. " 'The sole function of instructions is to convey to the minds of the jury the correct principles of law

applicable to the evidence submitted to it in order that *** the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence.' " *People v. Ramey*, 151 Ill. 2d 498, 535, 603 N.E.2d 519, 534 (1992) (quoting *People v. Gambony*, 402 Ill. 74, 81-82, 83 N.E.2d 321, 325 (1948)). Jury instructions must plainly set forth the applicable law and must not be misleading or confusing. *Valadovinos*, 2014 IL App (1st) 130076, ¶ 23. The trial court is required to use the most recent version of the IPI Criminal instructions when an instruction is applicable to the facts and law of the case. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). We review the decision to give a jury instruction for an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 66, 885 N.E.2d 1019, 1026 (2008).

¶ 44 Here, the State submitted 23 instructions, 2 of which were non-IPI instructions. The State offered non-IPI instructions for the definition and elements of obstructing identification because no IPI instructions existed. The non-IPI instructions informed the jury that it had to find the State proved beyond a reasonable doubt (1) defendant knowingly or intentionally gave a false or fictitious name to a peace officer and (2) did so at a time when the peace officer had lawfully arrested or detained him. These instructions accurately stated the elements from the obstructing identification statute. See 720 ILCS 5/31-4.5(a) (West 2018). We agree with OSAD that no meritorious claim can be raised that the trial court abused its discretion in giving the non-IPI instructions where (1) IPI instructions did not exist and (2) the instructions accurately stated the law.

¶ 45 C. Fitness

¶ 46 "The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51, 21 N.E.3d 695. "A defendant is unfit to stand trial if a mental or physical condition prevents him from

- 13 -

understanding the nature and purpose of the proceedings against him or assisting in his defense." *People v. Gillon*, 2016 IL App (4th) 140801, ¶ 20, 68 N.E.3d 942. When a defendant has been adjudicated unfit to stand trial, a presumption exists that he remains unfit until he is adjudicated fit at a valid subsequent hearing. *Id.* A trial court's decision that a defendant is fit to stand trial will only be reversed for an abuse of discretion. *Id.* ¶ 21. However, the record must affirmatively show the fitness determination was the result of judicial discretion and judgment. *Id.* "In other words, the court may not simply 'rubber stamp' an expert's ultimate conclusion that a defendant has been restored to fitness." *Id.*

¶ 47        After defendant was found unfit to stand trial, the trial court received three progress reports on defendant's condition. In July 2018, the court held a restoration to fitness hearing. Neither the State nor defense counsel objected to the court considering a July 10, 2018, report from IDHS on defendant's return to fitness. The court questioned defendant to determine if he understood the roles of the prosecutor, defense counsel, and the court, the charges against him, and the evidentiary burden the State had to meet to convict him. The court held, based on the IDHS report and defendant's answers, that defendant had been restored to fitness.

¶ 48        In December 2018, the trial court held another fitness hearing. The State noted Dr. Killian's report found defendant fit to stand trial and that Dr. Killian's concerns about fitness were related to defendant's "sovereign citizen" beliefs, which Dr. Killian classified as delusional. The State argued this was merely something defendant believed in. The trial court noted it reviewed Dr. Killian's report and had spent considerable time in person with defendant. The judge stated defendant conducted himself appropriately during his recent jury trial and abided by the court's directives. The court further noted defendant had behaved appropriately at the fitness

hearing.  The court found defendant fit and stated it believed defendant understood the proceedings and everyone's role in the proceedings.

¶ 49        Here, the record affirmatively shows the trial court relied on his own observations and experiences with defendant and the court questioned defendant to determine whether he understood the proceedings.  Defendant's responses indicated he understood the proceedings, even if he believed them to be invalid or inapplicable to him.  Accordingly, we agree with OSAD that no non-frivolous argument can be made that the court abused its discretion in finding defendant fit to stand trial.

¶ 50                                    D. Self-Representation

¶ 51        A person accused of a crime has a constitutional right to counsel at every critical stage of proceedings.  *United States v. Wade*, 388 U.S. 218, 224 (1967).  While a defendant also has the right to self-representation, he must act knowingly and intelligently when foregoing counsel.  *Faretta v. California*, 422 U.S. 806, 835 (1975).  Given the importance of the right to counsel, it "should not be lightly deemed waived."  (Internal quotation marks omitted.)  *People v. Langley*, 226 Ill. App. 3d 742, 749, 589 N.E.2d 824, 829 (1992).  In Illinois, a knowing and intelligent waiver occurs following substantial compliance with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).  *People v. Campbell*, 224 Ill. 2d 80, 87, 862 N.E.2d 933, 938 (2006).  Rule 401(a) requires the trial court to inform the defendant of—and then determine that the defendant understands—(1) the nature of the charges, (2) the minimum and maximum sentences prescribed by law, and (3) that he has the right to counsel and, if he is indigent, counsel can be appointed by the court.  *Id.* at 84.  The court must give these admonishments at the time the defendant waives his right to counsel.  *People v. Jiles*, 364 Ill. App. 3d 320, 329, 845 N.E.2d 944, 952 (2006).  "[T]echnical compliance with Rule 401(a) is not always required; rather,

- 15 -

substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was otherwise made knowingly, intelligently, and voluntarily, and the admonishments the defendant received did not prejudice his rights." *Id.*

¶ 52 In this case, defendant indicated he wished to represent himself immediately after the trial court determined he was fit to stand trial. The court read defendant the felony offense of driving while license revoked and informed defendant of the minimum and maximum penalties, including the fact he was eligible for an extended term of six years' imprisonment. The court also read defendant the felony offenses he was charged with in McLean County case Nos. 17-CF-1147, 18-CF-97, and 18-CF-460. Defendant indicated he understood the charges he faced.

¶ 53 The trial court asked defendant a series of questions and learned he was 32 years old, had a high school diploma, had completed some community college classes, was familiar with the legal process, and had never represented himself before. Defendant understood he would have to follow the rules of evidence and procedure and would be held to the same standards as an attorney experienced with those rules. Defendant also understood he might be at a disadvantage because he was not an attorney, he would not get extra time in the jail library because he was representing himself, and he would not automatically get an attorney if he changed his mind. The court found defendant was competent to represent himself and discharged appointed counsel.

¶ 54 The trial court substantially complied with Rule 401(a) in determining defendant knowingly and voluntarily waived his right to counsel. The court properly informed defendant of the felony offense of driving while license revoked and the minimum and maximum penalties he faced. The court also inquired into defendant's educational background and his past

experience with the criminal justice system. The court fully explained the process defendant would have to follow and the disadvantages he faced without counsel. Although the court failed to admonish defendant about the Class A misdemeanor obstructing identification charge, nothing in the record indicates the omission of informing defendant he faced a misdemeanor charge with a maximum penalty of one year in jail would have impacted defendant's waiver of counsel. Defendant insisted from the beginning of the case that he wished to represent himself, and he persisted in that desire after being admonished about the possible extended term sentences he faced on multiple felony charges across four separate cases. See *People v. Wright*, 2017 IL 119561, ¶¶ 55-56, 91 N.E.3d 826 (finding the defendant's waiver of counsel was made freely, knowingly, and intelligently even though the trial court incorrectly informed the defendant he faced a maximum sentence of 60 years rather than the actual maximum of 75 years' imprisonment).

¶ 55        After defendant's second fitness hearing in December 2018, he again indicated he wished to represent himself at sentencing. The trial court noted it had previously determined defendant knowingly and intelligently waived counsel, informed defendant of the potential pitfalls he faced without counsel, and determined defendant understood the ramifications of his decision. Under the "continuing waiver" rule, a valid waiver of counsel applies in posttrial proceedings unless (1) the defendant later requests counsel or (2) other circumstances establish the waiver was limited to a particular stage of proceedings. *People v. Ware*, 407 Ill. App. 3d 315, 342, 943 N.E.2d 1194, 1217 (2011). Here, the trial court again admonished defendant regarding his waiver of counsel prior to sentencing, even though the continuing waiver rule did not require such admonishments. Moreover, defendant requested, and received, counsel for his

motion to reconsider the sentence. We agree with OSAD that no non-frivolous issue regarding defendant's right to counsel can be raised on appeal.

¶ 56                                    E. Sentence

¶ 57        A trial court's sentencing decision is given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. A sentence within the statutory limits will be disturbed only where the trial court abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010). A sentence within the statutory range will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 22, 959 N.E.2d 703.

¶ 58        Here, the trial court imposed court costs and a conviction on the obstructing identification charge. On the driving while license revoked charge, the court imposed a four-year sentence of imprisonment, finding a sentence of probation or conditional discharge would deprecate the seriousness of the offense and not be consistent with the ends of justice. The court noted defendant was unlikely to comply with a community-based sentence and had previously failed to complete other community-based sentences. The court found a sentence of imprisonment necessary to protect the public.

¶ 59        The trial court considered all the relevant factors in aggravation and mitigation in sentencing defendant to a term of four years' imprisonment. Defendant was sentenced to a term of four years' imprisonment on his seventh conviction for a driving while license revoked charge after failing to successfully complete prior community-based sentences. Additionally, defendant had a lengthy criminal history beyond driving-related offenses. We agree with OSAD that no

non-frivolous argument can be made that the trial court abused its discretion in sentencing defendant to a term of four years' imprisonment.

¶ 60                                III. CONCLUSION

¶ 61          For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 62          Affirmed.