NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210059-U

NO. 4-21-0059

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 25, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cumberland County |
| TROYT A. COX, | ) | No. 18CF45 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jonathan T. Braden, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed, concluding the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting defendant's waiver of his right to counsel.

¶ 2    In August 2018, the State charged defendant, Troyt A. Cox, with driving while his license was revoked, a Class 4 felony pursuant to section 6-303(d-2) of the Illinois Vehicle Code (625 ILCS 5/6-303(d-2) (West 2018)).  Throughout the proceedings, defendant represented himself.  Following an October 2020 bench trial, the trial court found defendant guilty of driving while his license was revoked.  The court sentenced defendant to 30 months' imprisonment.

¶ 3    Defendant appeals, arguing the trial court erred by allowing defendant to waive his fundamental right to counsel without providing the admonishments required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).  For the following reasons, we reverse the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                                  A. Pretrial Proceedings

¶ 6            In August 2018, the State charged defendant with driving while his license was

revoked, a Class 4 felony pursuant to section 6-303(d-2) of the Illinois Vehicle Code (625 ILCS

5/6-303(d-2) (West 2018)). The information noted, "A conviction requires a minimum 30 days

imprisonment."

¶ 7            At a January 2019 preliminary hearing, defendant informed the trial court he was

representing himself. The court informed defendant he had the right to have an attorney

represent him and if he could not afford an attorney the court would appoint an attorney to

represent him. Defendant stated he understood his rights to an attorney. The court asked if

defendant was requesting to have an attorney appointed, and defendant said, "No, I'm not." The

court asked, "Why not?" and defendant responded, "I just, I don't want one." The court

continued to press for a reason why defendant did not want an attorney, and defendant said, "Due

to my past representation, I don't feel confident with counsel that's available." The court asked

if defendant thought he would be better able to represent himself and navigate complicated legal

proceedings that could result in a sentence to the Department of Corrections without an attorney

and defendant said, "Probably not, You Honor." The court stated, "Well, I agree with you. I

don't even think it's probable. I think it's clearly not."

¶ 8            The trial court again asked defendant if he was requesting an attorney to represent

him, and defendant again answered in the negative. The court said, "All right. I can't force you

to have an attorney represent you. I can tell you, though, I think it is a terrible idea for you to try

to represent yourself in this case without adequate legal representation." The court continued,

"You understand that an experienced attorney will be able to navigate through this case with you.

- 2 -

They'll understand the criminal procedure that applies. They'll understand to be able to develop any possible defenses on your behalf, to file the appropriate motions for you. That would be their role here. And you want to forego that and represent yourself. Is that what you're telling me?" Defendant indicated he would hire an attorney, and the court continued the case.

¶ 9        In March 2019, the trial court asked if defendant hired an attorney, and defendant stated he had not and was not planning to hire an attorney. The following exchange occurred:

"THE COURT: Are you requesting today the appointment of a public defender?

DEFENDANT COX: No, sir, I'm not.

THE COURT: Do you understand that you have a right to have a public—a right to have an attorney. If you cannot afford an attorney, I will appoint an attorney to represent you at no cost.

DEFENDANT COX: Yes, sir, I do.

THE COURT: All right. Knowing that, you wish to proceed representing yourself?

DEFENDANT COX: Yes, sir, I do.

THE COURT: You have a right to represent yourself as well, Mr. Cox. I'm sure I have gone over this with you.

DEFENDANT COX: Yes, we have.

THE COURT: This isn't the first conversation we've had. I think that's a very poor idea.

DEFENDANT COX: Right.

THE COURT: But I've gone over this before so I'm not going to go over the details of it again. If you want to represent yourself, I'll let you represent yourself. Is that what you want to do today?

DEFENDANT COX: Yes, sir."

The court then held a hearing on defendant's motion to dismiss which alleged defendant did not receive a preliminary hearing within 60 days of his arrest. The court denied the motion to dismiss.

¶ 10        Defendant represented himself during the preliminary hearing and waived arraignment, pleaded not guilty, and requested a jury trial. Defendant filed a motion to suppress, but he failed to appear at the hearing on the motion. Defendant filed a motion to continue, asserting he had another court appearance at the date and time of the hearing on the motion to suppress, which the State objected to asserting defendant's court appearance was at 9 a.m. and the hearing was set for 3 p.m. The court denied the motion to continue and the motion to suppress. At the next several court dates, defendant either represented himself or failed to appear.

¶ 11        In January 2020, the parties appeared in court and addressed some pretrial matters, including scheduling a hearing on defendant's third motion to suppress. The trial court expressed concern that defendant was not an attorney and seemed unsure of what to do in some situations. The court again asked defendant why he decided not to have a public defender represent him. Defendant responded, "I just never had any luck with them. You know. I'd just as soon take it on myself to represent myself rather than them, be with one of those people, one of them guys." The court told defendant he would be held to the same standard as any other

- 4 -

attorney, and defendant indicated he understood. The court again told defendant it was a poor decision to represent himself. The court noted the matter was not proceeding to trial the following day, which is why the court brought up defendant's decision to represent himself. The court again asked if defendant wanted to represent himself, and defendant responded, "Yes, sir, that's correct."

¶ 12 In February 2020, the parties appeared for a hearing on defendant's motion to dismiss and the State's motions *in limine*. The trial court again asked defendant if he planned on proceeding to jury trial representing himself. Defendant responded, "Yes, sir." The court admonished defendant about his rights to present a defense and confront witnesses. The following exchange occurred:

"THE COURT: All right. I just want to give you one more further admonishment. I know I talked about this several times with you. I think it is a poor decision for you to attempt to represent yourself at trial. If you, you indicated many times in this case that you were going to hire your own attorney. You have not done so. I've admonished you, if you cannot afford an attorney, I will appoint an attorney to represent you at no cost.

DEFENDANT COX: Okay.

THE COURT: Do you understand that?

DEFENDANT COX: Yes, I do.

THE COURT: And you still, knowing all of that, you wish to represent yourself?

DEFENDANT COX: Yes, I do.

THE COURT: I'm going to show a knowing and voluntary waiver of a right, of your right to counsel."

¶ 13        In October 2020, the State filed a bill of particulars to which defendant filed a written objection. During the hearing on defendant's objection, defendant asked the trial court to strike the bill of particulars from the record. The court informed defendant the jury would not receive the bill of particulars. The court noted there was some confusion because defendant did not really understand the proceedings. The court stated, "I will appoint an attorney to you to represent you. But you continue to persist in representing yourself. And that's fine. But you file these bizarre filings all the time *** reiterating the same issues over and over again." The court denied defendant's motion. Defendant then stated, "[A] bench trial would be fine[.]"

¶ 14                                    B. Trial

¶ 15        In October 2020, the matter proceeded to a bench trial. Prior to his bench trial, defendant affirmed he understood what a jury trial was, his right to a jury trial, and that he would be waiving his right to a jury trial.

¶ 16        Andrew Schabbing testified he was the chief of police for the City of Neoga. Schabbing testified that, on July 5, 2018, he came into contact with an individual later identified as defendant. Schabbing testified he saw a green Chrysler Sebring drive past that he initially believed belonged to a person with an active warrant. As he drove behind the Chrysler, Schabbing observed the vehicle turn left into a Dollar General parking lot without using a turn signal. Schabbing pulled into the parking lot to conduct a traffic stop, he observed defendant exit the vehicle and begin walking to the store. Schabbing stopped defendant and asked for his driver's license. Defendant told Schabbing he left his wallet at home and gave him the name Aaron T. Cox. According to Schabbing, he eventually learned defendant's name was Troyt

Aaron Cox and his driver's license was revoked. The State played a video of the traffic stop from Schabbing's dashboard camera. The State also introduced a certification from the Illinois Secretary of State showing defendant's driver's license was revoked on July 5, 2018, along with a certified abstract of defendant's driving record.

¶ 17        Defendant chose not to testify on his behalf. The trial court found defendant guilty of driving while his license was revoked.

¶ 18                                C. Sentence

¶ 19        At sentencing, the State introduced a certified abstract of defendant's driving record. The State argued that, in Cumberland County case No. 1991-TR-1365, defendant was convicted of driving while his license was suspended during a period of statutory summary suspension. In Effingham County case No. 2010-CF-176, defendant was convicted of driving while his license was revoked that occurred while his license was revoked for driving under the influence. The State argued the present case was defendant's third conviction for driving while his license was revoked for driving under the influence, which made this a Class 4 felony. The State recommended a sentence of 30 months' imprisonment.

¶ 20        Defendant argued the statute only made it a felony offense if the violation of driving while revoked was the proximate cause of death. Defendant further argued his license was suspended in 1996 for "violation of SR 22, insurance, not a violation of DUI offense." The court noted the State presented a certified copy of defendant's driving abstract and a letter from the Secretary of State indicating defendant's license was revoked in July 1992. The court stated the 1992 revocation was for operating a vehicle under the influence of alcohol and the Secretary of State certified that the revocation was still in effect. The court determined the State met its burden proving this was defendant's third violation for driving while his license was revoked and

the previous two violations were for revocations related to driving under the influence of alcohol. The court sentenced defendant to 30 months' imprisonment.

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23        On appeal, defendant argues the trial court erred by allowing defendant to waive his fundamental right to counsel without providing the admonishments required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 24        A person accused of a crime has a constitutional right to counsel at every critical stage of proceedings. *United States v. Wade*, 388 U.S. 218, 224 (1967). While a defendant also has the right to self-representation, he must act knowingly and intelligently when foregoing counsel. *Faretta v. California*, 422 U.S. 806, 835 (1975). Given the importance of the right to counsel, it "should not be lightly deemed waived." *People v. Langley*, 226 Ill. App. 3d 742, 749, 589 N.E.2d 824, 829 (1992). In Illinois, a knowing and intelligent waiver occurs following substantial compliance with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). *People v. Campbell*, 224 Ill. 2d 80, 87, 862 N.E.2d 933, 935 (2006). Rule 401(a) requires the trial court to inform the defendant of—and then determine that the defendant understands—(1) the nature of the charges, (2) the minimum and maximum sentences prescribed by law, and (3) that he has the right to counsel and, if he is indigent, counsel can be appointed by the court. *Id.* at 84. The court must give these admonishments at the time the defendant waives his right to counsel. *People v. Jiles*, 364 Ill. App. 3d 320, 329, 845 N.E.2d 944, 952 (2006). "[T]echnical compliance with Rule 401(a) is not always required; rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was otherwise made knowingly, intelligently, and voluntarily, and the admonishments the defendant received did not prejudice

his rights." *Id.* Whether a trial court failed to substantially comply with Rule 401(a) admonishments is a question of law we review *de novo*. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114, 53 N.E.3d 147.

¶ 25 Defendant acknowledges this issue was not preserved for review but asks us to consider it under the plain-error doctrine because the right to counsel is a fundamental right. Normally, we would find defendant forfeited appellate review of this issue. *People v. Piatkowski*, 225 Ill. 2d 551, 564, 870 N.E.2d 403, 409 (2007). However, Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." "[T]his court has considered the issue under the plain error rule, because the right to counsel is fundamental [citation], and review is warranted in this case." *People v. Stoops*, 313 Ill. App. 3d 269, 273, 728 N.E.2d 1241, 1244 (2000).

¶ 26 In this case, defendant indicated from the outset that he wished to represent himself. At a January 2019 hearing, the trial court informed defendant he had the right to have an attorney represent him and if he could not afford an attorney the court would appoint an attorney to represent him. Defendant stated he understood his right to an attorney. Defendant refused to request an appointed attorney, and the court explained the pitfalls of proceeding without counsel and indicated it thought the decision to proceed without counsel was "a terrible idea." Defendant indicated he would hire an attorney, and the court continued the case.

¶ 27 In March 2019, the trial court asked if defendant hired an attorney, and defendant stated he had not and was not planning to hire an attorney. The court again informed defendant of his right to counsel and, if he could not afford counsel, his right to appointed counsel.

Defendant again refused counsel, and the court stated it thought proceeding without counsel was "a very poor idea."

¶ 28 In January 2020, the trial court expressed concern that defendant was not an attorney and seemed unsure of what to do in some situations. The court again asked defendant why he decided not to have a public defender represent him. Defendant responded, "I just never had any luck with them. You know. I'd just as soon take it on myself to represent myself rather than them, be with one of those people, one of them guys." The court told defendant he would be held to the same standard as any other attorney, and defendant indicated he understood. The court again told defendant it was a poor decision to represent himself. The court again asked if defendant wanted to represent himself, and defendant responded, "Yes, sir, that's correct."

¶ 29 In February 2020, the trial court again asked defendant if he planned on proceeding to jury trial representing himself. Defendant responded, "Yes, sir." The following exchange occurred:

"THE COURT: All right. I just want to give you one more further admonishment. I know I talked about this several times with you. I think it is a poor decision for you to attempt to represent yourself at trial. If you, you indicated many times in this case that you were going to hire your own attorney. You have not done so. I've admonished you, if you cannot afford an attorney, I will appoint an attorney to represent you at no cost.

DEFENDANT COX: Okay.

THE COURT: Do you understand that?

DEFENDANT COX: Yes, I do.

- 10 -

THE COURT: And you still, knowing all of that, you wish to represent yourself?

DEFENDANT COX: Yes, I do.

THE COURT: I'm going to show a knowing and voluntary waiver of a right, of your right to counsel."

¶ 30    The trial court raised the issue of defendant representing himself numerous times over the course of proceedings. Although defendant indicated at one point he was going to hire an attorney, he ultimately chose not to do so. The court repeatedly informed defendant of his right to an attorney and that an attorney would be appointed if he could not afford to hire an attorney. The court also informed defendant he would be held to the same standards as any attorney and explained the disadvantages he faced without counsel. However, the court failed to admonish defendant about the nature of the charges against him or the minimum and maximum sentence he faced as required by Rule 401(a). Defendant asserts the trial court's failure to admonish him about two of the three admonishments required under Rule 401(a) does not amount to substantial compliance with the rule and the matter must be remanded for a new trial. The State argues the court substantially complied with Rule 401(a) because it did admonish him as to his right to an attorney or an appointed attorney. The State asserts defendant was aware of the minimum sentence because the information noted that the charge required a minimum sentence of 30 days' imprisonment. The State further argues the record demonstrates defendant was aware of the nature of the charges because his motion to dismiss acknowledged he faced a Class 4 felony charge.

¶ 31    Under these circumstances, we cannot say the trial court substantially complied with Rule 401(a). Although the court repeatedly informed defendant of his right to counsel (or

appointed counsel if he could not afford to hire an attorney), the court never informed defendant of the nature of the charges against him or of the minimum and maximum penalties before it accepted his waiver of the right to counsel. As noted, the State argues strict technical compliance with Rule 401(a) is not required, and defendant was insistent on representing himself like the defendants in *People v. Coleman*, 129 Ill. 2d 321, 333-34, 544 N.E.2d 330, 336 (1989) (finding substantial compliance with Rule 401(a) although the trial court failed to properly admonish the defendant as to the minimum sentence), *People v. Haynes*, 174 Ill. 2d 204, 243, 673 N.E.2d 318, 336 (1996) (finding substantial compliance with Rule 401(a) where the trial court admonished the defendant as to the minimum and maximum penalties for first degree murder but neglected to admonish the defendant as to the penalties for burglary), and *People v. Wright*, 2017 IL 119561, ¶¶ 55-56, 91 N.E.3d 826 (finding substantial compliance with Rule 401(a) even though the trial court incorrectly informed the defendant he faced a maximum sentence of 60 years rather than the actual maximum of 75 years' imprisonment). Unlike the cases relied on by the State, the court in this case never informed defendant of the nature of the charges against him and never admonished him as to the minimum and maximum possible penalties before it accepted his waiver of his right to counsel. See *People v. Martin*, 2021 IL App (4th) 180267, ¶¶ 35, 38 (remanding for a new sentencing hearing where the trial court failed to admonish the defendant as to the nature of the charges or the minimum and maximum penalties when the defendant sought to represent himself in posttrial proceedings).

¶ 32　　　　For the foregoing reasons, we conclude the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), where it never admonished defendant as to the nature of the charges against him or the minimum and maximum penalties he

faced before accepting his waiver of his right to counsel. Accordingly, we remand the matter for a new trial.

¶ 33                                   III. CONCLUSION

¶ 34          For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

¶ 35          Reversed and remanded.